**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Guy HAUGHWOUT, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 7, 2002.

Filed Nov. 13, 2003.

Albert J. Flora, Wilkes–Barre, for appellant.

Frank P. Barletta, Asst. Dist. Atty., Wilkes–Barre, for Com., appellee.

Before: MUSMANNO, GRACI, and MONTEMURO,* JJ.

GRACI, J.

¶ 1 Appellant, Guy Haughwout ("Haughwout"), appeals from the judg-ments of sentence following his guilty pleas for forgery and two counts of inde-cent assault and the trial court's determi-nation that he is a "sexually violent preda-tor" ("SVP") pursuant to Pennsylvania's Megan's Law II, 42 Pa.C.S.A. §§ 9791–99.[1] After careful review, we affirm.

### I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 On February 15, 2002, Haughwout was found to be an SVP and sentenced to seven to thirty-six months' imprisonment for indecent assault (count three), 18 Pa. C.S.A. § 3126(a)(7), seven to thirty-six months' imprisonment for a second count of indecent assault (count one), 18 Pa. C.S.A. § 3126(a)(7), to be served concur-rently with the first count of indecent as-sault (count three), and to one year of probation for forgery (count one), 18 Pa. C.S.A. § 4101(a), to be served consecutive-ly to the first count of indecent assault (count three), for incidents involving his five-year-old daughter in the Fall of 2000 and a ten-year-old girl during the Fall of 1996. Haughwout was granted credit for time served.[2]

¶ 3 On February 25, 2002, Haughwout filed timely motions to modify the sen-tences. In his motions, he challenged the trial court's finding that he is an SVP and

---

* Retired Justice assigned to the Superior Court.

1. Megan's Law I was amended in July 2000, resulting in Megan's Law II. Under Megan's Law I, a person convicted of a sexual assault had to rebut the presumption of SVP classifi-cation by clear and convincing evidence. *Commonwealth v. Williams*, — Pa. —, 832 A.2d 962, 964–66 (2003). However, our Su-preme Court and this Court ruled that such a requirement violated a defendant's due pro-cess rights. *Id.* at 966–67 (citing *Common-wealth v. Williams*, 557 Pa. 285, 733 A.2d 593 (1999)); *Commonwealth v. Halye*, 719 A.2d 763 (Pa.Super.1998) (*en banc*). The General Assembly then passed Megan's Law II. Al-though the legislative policy remained the same as in Megan's Law I, the manner in which a defendant was adjudicated an SVP was altered. *Williams*, 832 A.2d at 966–67. The main distinction between Megan's Law I and Megan's Law II is that under Megan's Law II the Commonwealth now has the bur-den of proving by clear and convincing evi-dence that a defendant is an SVP. *Id.* (citing 42 Pa.C.S.A. § 9795.4(e)(3)); *see infra.*

2. The trial court stated that, among other things, Haughwout's parole and probation were conditioned on his continued therapy and treatment. Moreover, Haughwout was to have no contact with any minors, alcohol, or drugs.

the constitutionality of Pennsylvania's Megan's Law.

¶ 4 On February 26, 2002, the court wrote "Denied" on proposed orders (which accompanied the modification motions) for the district attorney's office to show cause why Haughwout's request for modification of sentences should not be granted.[3] Haughwout filed his notices of appeal on March 13, 2002.[4] In his notices of appeal, Haughwout stated that the trial court's judgments of sentence became final on February 26, 2002. This was the date of the above-referenced orders. Haughwout's appeals were timely filed pursuant to Pa.R.Crim.P. 720(A)(2)(a).[5]

¶ 5 Nonetheless, on April 18, 2002, the trial court purported to modify Haughwout's sentences to seven to twenty-four months' imprisonment, less one day with credit for time served, for the first count of indecent assault (count three), seven to twenty-four months' imprisonment, less one day, for the second count of indecent assault (count one), to be served concurrently with the first count of indecent assault, and two years' probation for forgery (count one), to be served consecutively to the first count of indecent assault (count three).[6]

¶ 6 The following day, on April 19, 2002, the trial court modified the April 18, 2002, order as to the second count of indecent assault (count one) to two years' probation, to be served concurrently with the first count of indecent assault (count three).[7] Because Haughwout served his minimum sentence, the trial court directed that he be released from incarceration and report to the Luzerne County Adult Probation and Parole Department.[8]

¶ 7 On January 21, 2003, however, this Court held that the trial court was without jurisdiction to modify Haughwout's sentences. Therefore, we remanded this case to the trial court and ordered that it reinstate the original sentences imposed on February 16, 2002. Moreover, we directed the trial court to file an opinion addressing the SVP determination.

¶ 8 On February 6, 2003, the trial court reinstated Haughwout's sentences imposed on February 15, 2002, and, on February 14, 2003, the trial court filed an opinion addressing the SVP determination.

---

3. The dockets in both indecent assault cases reflect the same information in relation to this order: "02/27/2002 Order of Court Filed—Order Denied." This entry is followed by the name of the judge.

4. In his brief, Haughwout states that his post-sentence motion "was denied by the Trial Court without hearing." Appellant's Brief, at 4.

5. Rule 720(A)(2)(a) states that, "[i]f the defendant files a timely post-sentence motion, the notice of appeal shall be filed ... within 30 days of the entry of the order deciding the motion." Pa.R.Crim.P. 720(A)(2)(a).

6. The trial court noted that all of the conditions of the February 15, 2002 sentences were to apply.

7. The trial court granted Haughwout credit for time served and stated that all conditions

of the February 15, 2002, sentences were to apply.

8. "Paroles from imprisonment for less than a maximum period of two years shall be granted by the sentencing court[.]" 61 P.S. § 331.26. However, paroles from imprisonment for a maximum period of two years or more shall be granted by the Pennsylvania Board of Parole. 61 P.S. § 331.17. In the instant case, Haughwout was originally sentenced to a maximum period of more than two years' imprisonment. Thus, the trial court was without power to grant Haughwout's parole. Only by reducing the sentence as the trial court purported to do here could the trial court grant parole in these cases. However, after Haughwout filed his notices of appeal on March 13, 2002, the trial court was powerless to modify Haughwout's sentence.

¶ 9 Haughwout raises the following issues for our review:

1. Whether the evidence was sufficient to establish by clear and convincing evidence that the Defendant is a sexually violent predator as defined under the provisions of Pennsylvania's Megan's Law, 42 Pa.C.S.A. 9792, 9795.4(e)(3)?

. . .

2. Whether the mandatory registration, notification and counseling provisions of Pennsylvania's Megan's Law, 42 Pa.C.S.A. 9791 et seq. violates the Fourteenth Amendment of the Constitution of the United States?

. . .

Appellant's Brief, at 2.

## II. DISCUSSION

¶ 10 Haughwout first argues that there is insufficient evidence that he is an SVP.

A challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review. *See Commonwealth v. Weston*, 561 Pa. 199, 749 A.2d 458, 460 n. 8 (2000). The appropriate standard of review regarding the sufficiency of the evidence is "whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offenses." *Commonwealth v. DeJesus*, 567 Pa. 415, 787 A.2d 394, 398 (2001). As a reviewing court, we "may not weigh the evidence and substitute our judgment for that of the fact-finder." *Commonwealth v. Vetrini*, 734 A.2d 404, 407 (Pa.Super.1999). Furthermore, a fact-finder is free to believe "all, part or none" of the evidence presented. *Id.*

"At the hearing prior to sentencing the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator." 42 Pa.C.S. § 9795.4(e)(3). Accordingly, in reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied. . . .

*Commonwealth v. Krouse*, 799 A.2d 835, 837–38 (Pa.Super.2002).

¶ 11 An SVP is defined as "[a] person who has been *convicted of a sexually violent offense* as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) *due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.*" *Krouse*, 799 A.2d at 838 (quoting 42 Pa.C.S. § 9792) (emphasis in original). "Mental abnormality" is "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." 42 Pa.C.S.A. § 9792. Moreover, "predatory" is defined as "[a]n act directed at a stranger or at a person with whom a relationship has been established or promoted for the primary purpose of victimization." *Id.*

The statute specifically details the process by which an individual is determined to be an SVP. After a defendant is convicted of an offense specified in Section 9795.1, such as indecent assault [in the instant case], the trial court must

order the [State Sexual Offenders] Assessment Board to assess the defendant for the appropriateness of an SVP classification. *See* 42 Pa.C.S. § 9795.4(a). The administrative officer of the Assessment Board then assigns one of its members to conduct the assessment pursuant to Section 9795.4(b). Section 9795.4(b) specifies that the assessment must include an examination of the following factors:

§ 9795.4 Assessments

. . .

(b) Assessment.... *An assessment shall include, but not be limited to, an examination of the following:*

(1) Facts of the current offense, including:

 (i) Whether the offense involved multiple victims.

 (ii) Whether the individual exceeded the means necessary to achieve the offense.

 (iii) The nature of the sexual contact with the victim.

 (iv) Relationship of the individual to the victim.

 (v) Age of the victim.

 (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

 (vii) The mental capacity of the victim.

(2) Prior offense history, including:

 (i) The individual's prior criminal record.

 (ii) Whether the individual completed any prior sentences.

 (iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

 (i) Age of the individual.

 (ii) Use of illegal drugs by the individual.

 (iii) Any mental illness, mental disability or mental abnormality.

 (Iv) BEHAVIORAL CHARACTERISTICS THAT CONTRIBUTE TO THE INDIVIDUAL'S CONDUCT.

(4) Factors that are supported in a sexual offender assessment filed as criteria reasonably related to the risk of reoffense.

42 Pa.C.S. § 9795.4(b) (emphasis added).

Following the submission of a written report containing the assessment and a praecipe filed by the district attorney, the trial court must hold a hearing. *See* 42 Pa.C.S. § 9795.4(e). During the hearing on the SVP classification, the following procedural protections apply:

The individual and district attorney shall be given notice of the hearing and an opportunity to be heard, the right to call witnesses, the right to call expert witnesses and the right to cross-examine witnesses. In addition, the individual shall have the right to counsel and to have a lawyer appointed to represent him if he cannot afford one. If the individual requests another expert assessment, the individual shall provide a copy of the expert assessment to the district attorney prior to the hearing.

42 Pa.C.S. § 9795.4((e)(2)).

*Krouse*, 799 A.2d at 838–39.

█ ¶ 12 In the instant case, the trial court relied heavily on the findings of David Humphreys of the State Sexual Offenders Assessment Board whom it found credible in finding that Haughwout is an SVP. Opinion, 2/14/03, at 4. According to

Mr. Humphreys, the offenses in the instant case involved multiple victims. One of the victims was a friend of Haughwout's family and the other victim was Haughwout's daughter. Humphreys noted that Haughwout admits to having at least a thirteen-year history of abnormal sexual contact with minors beginning with the complaint of his fifteen-year-old sister-in-law in 1990, that Haughwout has a history of abusing alcohol and painkillers, and that the nature of Haughwout's counseling for the offenses is unclear. Most significantly, Humphreys found that Haughwout's substance abuse lowers his inhibitions and provides an opportunity for him to act out abnormal sexual urges, that Haughwout promoted a relationship with his daughter to molest her a series of times, and that Haughwout's sexual abuse of a family member increases his risk of recidivism. This evidence is clearly and convincingly sufficient to support the trial court's determination that Haughwout is an SVP. *See Krouse*, 799 A.2d at 838. Accordingly, we must reject Haughwout's insufficiency claim.

¶ 13 Haughwout also challenges the constitutionality of Megan's Law's registration, notification, and counseling provisions. Specifically, Haughwout argues that: the registration, notice, and counseling requirements constitute additional criminal punishment, violating his right to a jury trial; Megan's Law violates his procedural due process rights since it does not provide him with the opportunity for future assessment of his status as an SVP; and Megan's Law infringes on his substantive due process rights.[9]

¶ 14 At the outset, we note that issues, even those of constitutional dimension, are waived if not raised in the trial court. *Commonwealth v. Berryman*, 437 Pa.Super. 258, 649 A.2d 961, 973 (1994) (citations omitted). "[A] new and different theory of relief may not be successfully advanced for the first time on appeal." *Commonwealth v. York*, 319 Pa.Super. 13, 465 A.2d 1028, 1032 (1983) (citation omitted).

¶ 15 Here, Haughwout's counsel first challenged the constitutionality of Megan's Law at the Megan's Law hearing, stating: "For the record, if I may, Your Honor, I would like to make a constitutional objection to the Megan's Law proceeding both the right to trial and right to privacy enhances his sentence without a jury trial." N.T. Megan's Law Hearing, 1/3/02, at 3. At the sentencing hearing, Haughwout's counsel stated: "I would just like to reaffirm our constitutional objection to the Megan's Law under both the U.S. and Pennsylvania Constitution." N.T. Sentencing Hearing, 2/15/02, at 2–3.[10] Finally, in his motions to

9. The Commonwealth argues that Haughwout's constitutional claims have already been rejected by this Court in *Commonwealth v. Mountain*, 711 A.2d 473 (Pa.Super.1998). Appellee's Brief, at 4. In *Mountain*, the Court found, *inter alia*, that the registration requirements applicable to all sexual offenders found in Megan's Law I did not deprive the defendant of his substantive or procedural due process rights. *Mountain*, however, was not concerned with the registration and notification requirements of Megan's Law I applicable to SVPs which the *Mountain* Court noted "are much more broad" than the registration requirements applicable to all sexual offenders.

*Mountain*, 711 A.2d at 475. *See also Halye*, 719 A.2d at 766 (recognizing distinction between challenge to registration provision under Megan's Law I in *Mountain* and challenge resulting from SVP designation under Megan's Law I). Here, of course, since Haughwout is subject to these much more broad registration requirements of Megan's Law II applicable to SVPs, *Mountain* is not necessarily controlling.

10. We note that Haughwout has apparently abandoned any claims regarding the Pennsylvania Constitution since he only references

modify his sentences, Haughwout stated: "The Defendant requests the Court to modify his sentence in that he ... reiterates the objections previously made on the record, including but not limited to any Pennsylvania or U.S. constitutional issues that relate to Megan's Law." Motions to Modify Sentences, 2/25/02. It is arguable that Haughwout did not properly preserve his last two arguments regarding the constitutionality of Megan's Law and that we could find that those arguments are waived. However, since these arguments present questions of law and the Commonwealth, as appellee, has not suggested waiver but has, instead, addressed the merits of Haughwout's arguments (albeit sparingly), we will resolve them on their merits.[11]

 ¶ 16 "The constitutional validity of duly enacted legislation is presumed. The party seeking to overcome the presumption of validity must meet a formidable burden. A statute will only be declared unconstitutional if it clearly, palpably and plainly violates the constitution." *Commonwealth v. Means*, 565 Pa. 309, 773 A.2d 143, 147 (2001) (citations omitted).

¶ 17 Pursuant to Megan's Law II,

any offender convicted of a predicate offense, whether or not he is deemed a sexually violent predator, must: (1) register his current residence or intended residence with the state police upon release from incarceration, parole from a correctional institution, or commencement of an intermediate punishment or probation; (2) inform the state police

within ten days of a change of residence; and (3) register within ten days with a new law enforcement agency after establishing residence in another state. *See* 42 Pa.C.S. § 9795.2(a). State police officials then forward this data, together with fingerprint and photographic information obtained from the sentencing court, *see* 42 Pa.C.S. § 9795.3(4), to the chief of police of the locality where the offender will reside following his change of address or release from prison. *See* 42 Pa.C.S. § 9795.2(c). For sexually violent predators, the police chief in turn notifies the individual's neighbors, as well as day care operators and school officials within the municipality. *See* 42 Pa.C.S. § 9798(b). The data sent to these recipients includes the offender's name, address, offense, and photograph (if available), as well as the fact that he has been determined by a court to be a sexually violent predator.... *See* 42 Pa. C.S. § 9798(a). The sexually violent predator's name and address, including any subsequent change of address, is also sent to the victim of the offense, until the victim requests that such notification be terminated. *See* 42 Pa.C.S. § 9797.

Sexually violent predators must register pursuant to the above provisions for their lifetime. *See* 42 Pa.C.S. § 9795.1(b)(3)....

In addition to registration upon release from prison and upon changes of address, sexually violent predators must periodically verify their address with the state police. To accomplish this, the

the United States Constitution in the instant appeal.

**11.** We note that the trial court never issued a specific ruling or opinion addressing Haughwout's constitutional claims. However, in deciding issues of law, an appellate court need not defer to the conclusions of the

trial court. *Commonwealth v. Wood*, 803 A.2d 217, 220 (Pa.Super.2002) (stating that our scope of review in determining a question of law is plenary) (citation omitted). Accordingly, the lack of a trial court opinion in the instant case does not hamper our review.

state police send a verification form once every three months to the last residence reported. Upon receipt of this form, the sexually violent predator must appear within ten days at any state police station to submit the completed form and be photographed. The Act also requires a sexually violent predator to attend "at least monthly" counseling sessions in a program approved by the Board, and to pay all fees assessed from such sessions, unless he cannot afford them, in which case they are paid by the parole office. *See* 42 Pa.C.S. § 9799.4. The Board monitors compliance with this requirement, *see id.;* the sexually violent predator must also verify such compliance with the state police as part of the quarterly verification process discussed above. *See* 42 Pa.C.S. § 9796(a).

*Commonwealth v. Williams,* —— Pa. ——, 832 A.2d 962, 967–68 (2003) (footnotes omitted).

¶ 18 Haughwout argues that "[t]he very nature of the registration, notice and counseling scheme, when evaluated under the *Artway* test, *Artway v. Attorney General,* 81 F.3d 1235 (3rd Cir.1996), reveals that these provisions are so harsh as to constitute punishment requiring the full panalopy [sic] of due process rights, including proof beyond a reasonable doubt and jury trial." Appellant's Brief, at 9. Our Supreme Court recently rejected a similar argument in *Williams, supra.*[12]

¶ 19 In *Williams,* the Court stated:

the United States Supreme Court has clarified that any judicial finding which results in punishment beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. *See Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). Because a determination of sexually violent predator status pursuant to Megan's Law II is submitted to a judge and may be established by a lesser degree of proof, *see* 42 Pa.C.S. § 9795.4(e)(3) (clear and convincing evidence standard), it cannot surmount *Apprendi* if such finding results in further criminal punishment.

*Id.* at 968.

¶ 20 In order to determine whether Megan's Law results in further criminal punishment, the *Williams* Court applied the test utilized in *Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). *Williams,* 832 A.2d at 971–72. First, the Court found that the General Assembly intended Megan's Law to be civil and remedial rather than punitive. *Id.* at 971–73. Next, the Court found that Megan's Law does not have a punitive purpose and effect. *Id.* at 972–85. Specifically, the Court determined that Megan's Law: does not involve an affirmative disability or restraint; has not traditionally been regarded as punishment; does not come into play only upon a finding of scienter; does not operate primarily to deter blameworthy conduct; applies after a finding of a mental abnormality or personality disorder as opposed to a finding of criminal behavior; is rationally connected to a non-punitive purpose; and is reasonably designed to serve the government's legitimate goal of enhancing public awareness and ensuring that offenders do not relapse into harmful behavior. *Id.* Thus, the Court concluded that the registration, notice, and counseling provisions of Megan's Law do not result in additional criminal punishment. Accordingly, in light of *Williams,* we reject the argument presented by Haughwout.

---

**12.** We recognize that Haughwout did not have the benefit of the Supreme Court's opinion in *Williams* at the time he filed his brief with this Court.

¶ 21 Haughwout also contends that Megan's Law violates his procedural due process rights since it does not provide him with a "statutory right to petition for a reassessment if he no longer has a mental abnormality or personality disorder that makes him likely to engage in sexually violent offenses." Appellant's Brief, at 8. In determining whether Megan's Law imposed additional criminal punishment, the *Williams* Court stated:

one of the most troubling aspects of the statute is that the period of registration, notification, and counseling lasts for the sexually violent predator's entire lifetime. A reasonable argument could be made that, to avoid excessiveness, the Legislature was required to provide some means for a sexually violent predator to invoke judicial review in an effort to demonstrate that he no longer poses a substantial risk to the community. This aspect of the statute may be particularly problematic if the definition of "sexually violent predator" is incapable of reasonably precise implementation .... Notably, however, the position that a means for subsequent judicial review is a necessary feature of any valid registration/notification scheme assumes that, given sufficient time and/or treatment, sexually violent predators can be fully cured of the "mental abnormality or personality disorder [making them] likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9792 (defining "sexually violent predator"). As the record is devoid of any information concerning the prospect of successful treatment of such individuals, the presumption of constitutionality enjoyed by all validly enacted legislation, *see Commonwealth v. Means*, 565 Pa. 309, 315, 773 A.2d 143, 147 (2001), remains unrebutted. *Cf. Commonwealth v. Fleming*, 801 A.2d 1234, 1240–41 (Pa.Super.2002) (concluding that Megan's Law II's extension of the registration term for certain offenders from ten years to life did not constitute punishment).

*Williams*, 832 A.2d at 982–83 (footnote omitted).

¶ 22 In addressing this claim it must be observed that the legislature has found that "[t]hese sexually violent predators pose a high risk of engaging in further offenses even after being released from incarceration or commitments." 42 Pa. C.S.A. § 9791(a)(2). In this case, as set forth above, Mr. Humphreys of the State Sexual Offenders Assessment Board specifically found that Haughwout poses such a high risk of recidivism. Despite having more than ample opportunity to do so at the Megan's Law hearing held in this case, Haughwout has provided no information regarding the prospect of successful treatment of SVPs. Given the specific legislative finding that SVPs pose a high risk of recidivism and given the complete lack of information concerning the prospect of successful treatment of SVPs, we are constrained to conclude that Haughwout has failed to meet his formidable burden required to overcome the presumed constitutionality of the challenged statute. *See Means*, 773 A.2d at 147. As the presumption of constitutionality remains unrebutted, this argument must fail.

¶ 23 Finally, citing *Foucha v. Louisiana*, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), and *Young v. Weston*, 898 F.Supp. 744 (W.D.Wash.1995), Haughwout argues that "confinement of persons who have mental abnormality or personality disorders but who are not mentally ill based upon predictions of future dangerousness violates substantive due process." Appellant's Brief, at 9. Unlike the defendants in *Foucha* and *Young*, however, Haughwout is not subject to confinement under the registration, notification, and counseling provisions of Megan's Law. Ac-

cordingly, *Foucha* and *Young* offer Haughwout no support, and we reject this argument.

### III. CONCLUSION

¶ 24 The evidence is sufficient to clearly and convincingly show that Haughwout is an SVP as determined by the learned trial court. Accordingly, Haughwout's challenge to the sufficiency of the evidence supporting his SVP status must be rejected. We also reject Haughwout's arguments that Megan's Law II is unconstitutional since he has not carried his formidable burden of demonstrating its constitutional invalidity.

¶ 25 Judgments of sentence affirmed.