**Commonwealth v. Mullins**

C.P. of Bucks County, no. 2003-04098.

*Robin P. Campbell,* for plaintiff.

*Charissa Liller, Christa S. Dunleavy* and *Ann P. Russavage-Faust,* for defendant.

BEFORE: RUFE, J.J., CEPPARULO AND GOLD-BERG, *JJ.*

GOLDBERG, *J.,* February 14, 2005—This opinion is written pursuant to Thomas Mullins' (petitioner) post-sentence motion challenging the constitutionality of the Pennsylvania Registration of Sexual Offender's Act, commonly known as Megan's Law II. The primary issues presented by petitioner are whether: (1) the absence of judicial review for the lifetime reporting, notification and counseling provisions of the Act render Megan's Law II unconstitutionally excessive and (2) whether Megan's Law II is unconstitutionally vague.

## PROCEDURAL HISTORY

Petitioner was originally charged with involuntary deviate sexual intercourse and related offenses. These charges were brought as a result of petitioner's molestation of his 12-year-old stepdaughter. (N.T. 11/12/03, p. 89.) On November 12, 2003, petitioner pled guilty to these charges and was subsequently sentenced to six to 12 years incarceration.

In summary, the facts of the record at the guilty plea hearing reflect that petitioner began to sexually assault his stepdaughter when she was between first and second grade. (N.T. 11/12/03, p. 117.) Specifically, while the victim's mother was away on business trips, petitioner forced her to perform oral sex on him and to manually stimulate his penis. (N.T. 11/12/03, p. 117.) During these assaults, petitioner took off all of his clothing and per-

suaded the victim to also remove her clothing. (N.T. 11/12/03, p. 117.) At the conclusion of these encounters, petitioner would ejaculate in a towel, telling his victim that this will "make us seem more like a family" and that "every dad and daughter does it." (N.T. 11/12/03, pp. 117-18.) On at least one occasion, petitioner rubbed the victim's vagina and tried to place his finger inside, but the victim stopped him after he had gotten past the labia of her vagina. (N.T. 11/12/03, pp. 117-18.) On other occasions, petitioner also forced the victim to view pornographic movies, during which he masturbated in front of her. (N.T. 11/12/03, p. 118.)

On May 7, 2004, a hearing was held before the Honorable Mitchell S. Goldberg on the Commonwealth's motion that petitioner be classified as a sexually violent predator (SVP). At the conclusion of this hearing Judge Goldberg found that the Commonwealth had proven by clear and convincing evidence that petitioner was an SVP. Petitioner filed post-sentence motions on May 20, 2004, seeking reconsideration of the finding of SVP status and requested a hearing to challenge the constitutionality of Megan's Law II. This hearing was held on September 28, 2004, before Judge Goldberg and continued to November 4, 2004. At these hearings, Dr. Timothy Foley testified as petitioner's expert witness and Dr. Veronique Valliere testified as the Commonwealth's expert witness. Thereafter, oral argument was held before a three-judge panel of the Bucks County Court of Common Pleas— the Honorable John J. Rufe, the Honorable Albert J. Cepparulo, and the Honorable Mitchell S. Goldberg. Numerous briefs and supplemental materials were submitted by petitioner, the Commonwealth and the Phila-

delphia Public Defender's office, which filed an extensive amicus curiae brief to assist this court in deciding the instant matter.

This opinion will consider only the constitutionality of Megan's Law II as it relates to the statute's lack of judicial reviewability of the SVP finding and whether the statute is unconstitutionally vague in its imprecision of terms or its method of prediction.

The Pennsylvania Supreme Court decided the constitutionality of the lifetime registration, notification and counseling requirements, with no subsequent judicial review, in *Commonwealth v. Williams,* 574 Pa. 487, 832 A.2d 962 (2003) *(Williams II)*. To address the concerns raised by the Supreme Court in *Williams II,* we granted petitioner and Commonwealth an opportunity to offer evidence regarding whether Megan's Law II is excessive as a civil statute and, thus, unconstitutionally punitive. After review of the evidence presented, we find that petitioner has not produced sufficient evidence to satisfy the burden established by *Williams II* and, accordingly, on the record before us, we uphold the constitutionality of Megan's Law II.

Petitioner's claim that Megan's Law II is unconstitutionally vague must also be rejected by this court because the precedent established in *Commonwealth v. Howe,* 842 A.2d 436 (Pa. Super. 2004), cannot be disturbed on the record before us. Finally, petitioner's contention that Megan's Law II is unconstitutionally vague based on the unreliability of the methods used by the Sexual Offenders' Assessment Board (SOAB) in assessing SVP status is likewise rejected based on the insufficiency of evidence in the record.

## BACKGROUND

Originally enacted in 1995, Megan's Law seeks to protect the safety and welfare of Pennsylvanians by requiring mandatory registration and community notification for sexual offenders who are about to be released from incarceration by the state. 42 Pa.C.S. §9791(b). Under the provisions set forth in the Act, a person convicted of a specified predicate offense[1] is obligated to register with the Pennsylvania State Police upon his release from prison and annually verify his residence for a period of 10 years. *Commonwealth v. Kopicz,* 840 A.2d 342, 346 (Pa. Super. 2003); 42 Pa.C.S. §§9795.1, 9796(b).

Subsequent to conviction of a predicate offense, a process begins to ascertain whether the person should be classified as an SVP.[2] Those classified as SVPs are subject to reporting requirements for their lifetime and must attend approved monthly counseling. 42 Pa.C.S. §§9795.1(b), 9796(a), 9799.4. In the case of an SVP, local law enforcement is also charged with: "notif[ying] the individual's neighbors, as well as day care operators and school officials within the municipality. . . . The data sent to these recipients includes the offender's name, address, offense, and photograph (if available), as well as the fact that he has been determined . . . to be a sexu-

---

1. Set forth in 42 Pa.C.S. §9795.1.

2. A sexually violent predator is a person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. 42 Pa.C.S. §9792.

ally violent predator . . . . The sexually violent predator's name and address, including any subsequent change of address, is also sent to the victim of the offense . . . ." *Williams II,* 832 A.2d at 967.

The rationale for creating this separate and more restrictive classification of persons stems from the legislative finding that "sexually violent predators pose a high risk of engaging in further offenses even after being released from incarceration or commitments." 42 Pa.C.S. §9791(a)(2); *Commonwealth v. Haughwout,* 837 A.2d 480, 489 (Pa. Super. 2003).

In May of 2000, following the Pennsylvania Supreme Court's decision declaring Megan's Law I unconstitutional,[3] the legislature passed Megan's Law II to cure the constitutional defects highlighted by the court. Apart from amending the necessary provisions to meet the requirements of the constitution, Megan's Law II is substantially similar to Megan's Law I. Notwithstanding, the legislature rescinded a provision contained in Megan's Law I that allowed individuals to petition the courts for reconsideration of the SVP determination. 42 Pa.C.S. §9794(f). Although provisions of Megan's Law II imply the possible termination of a person's SVP status, the mechanism allowing reconsideration has been removed.[4] 42 Pa.C.S. §9798(a)(iv). In the absence of judicial re-

---

3. The Pennsylvania Supreme Court invalidated Megan's Law I in *Commonwealth v. Williams,* 557 Pa. 285, 733 A.2d 593 (1999) *(Williams I).*

4. 42 Pa.C.S. §9798(a)(iv) states:

"(1) The notice shall contain:

"(iv) A statement that he has been determined by court order to be a sexually violent predator, which determination has or has not been terminated as of a date certain."

view, a person classified as an SVP remains subject to the Act's reporting, notification, and counseling requirements for the remainder of his or her life. No set of circumstances or changes in an SVP's life will allow reconsideration of a person's SVP status.

The constitutionality of the lifetime registration, notification and counseling requirements, with no subsequent judicial review, was addressed in *Williams II.* There, the Pennsylvania Supreme Court found that the registration, notification and counseling provisions of the Act do not constitute criminal punishment; rather, they "constitute non-punitive, regulatory measures supporting a legitimate governmental purpose." *Williams II,* 832 A.2d at 986.

## ANALYSIS

Preliminarily, we note that petitioner challenges the constitutionality of a statute enacted by the Pennsylvania Legislature. All validly enacted legislation enjoys a "strong presumption of constitutionality." *Howe,* 842 A.2d at 444. "A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably, and plainly violates the constitution. . . . Thus, the party challenging the constitutionality of a statute has a heavy burden of persuasion." *Id.* at 441. We therefore examine petitioner's arguments with due consideration for these presumptions and heavy burdens.

## I. *Lack of Judicial Review*

In his first argument, regarding the statute's lack of judicial review, petitioner contends that Megan's Law II is punitive in nature and therefore imposes additional

punishment on an SVP without the benefit of due process protection. The court in *Williams II* held that the United States Supreme Court's traditional two-pronged test set out in *Kennedy v. Mendoza-Martinez,* 372 U.S. 144 (1963), is the proper method for analyzing whether otherwise civil or remedial legislative measures should be deemed penal for constitutional purposes. Pursuant to this test, the court first inquires whether the legislature's intent was to impose punishment, and, if not, whether the statutory scheme is nonetheless so punitive either in purpose or effect as to negate the legislature's non-punitive intent. *Williams II,* 832 A.2d at 971.

The first prong requires inquiry into whether the legislature's intent was to impose punishment. To determine whether the legislature intended to impose punishment by enacting Megan's Law II, the court in *Williams II* looked to the declaration of policy found in 42 Pa.C.S. §9791(b). That section states:

"*(b) Declaration of policy.*—It is hereby declared to be the intention of the General Assembly to protect the safety and general welfare of the people of this Commonwealth by providing for registration and community notification regarding sexually violent predators who are about to be released from custody and will live in or near their neighborhood. It is further declared to be the policy of this Commonwealth to require the exchange of relevant information about sexually violent predators among public agencies and officials and to authorize the release of necessary and relevant information about sexually violent predators to members of the general public as a means of assuring public protection and shall not be construed as punitive." 42 Pa.C.S. §9791(b).

The statute also states that SVPs pose a high risk of re-offense and that "protection of the public from this type of offender is a paramount governmental interest." 42 Pa.C.S. §9791(a)(2). The legislature found that SVPs pose a high risk of engaging in further offenses even after being released from incarceration. 42 Pa.C.S. §9791(a)(2). The court in *Williams II* ultimately concluded that the legislature's purpose in passing Megan's Law II was to enhance community protection through a civil, regulatory scheme, and not to punish sexually violent predators. *Williams II,* 832 A.2d at 969.

Having found the legislature intended the law to be civil and remedial, the court moved on to the second stage of analysis, which involves examining the factors identified by the Supreme Court in its seminal *Kennedy v. Mendoza-Martinez,* 372 U.S. 144 (1963), decision. *Williams II,* 832 A.2d at 972. Although these factors are "neither exhaustive nor dispositive," they have proved helpful in considering whether a civil, remedial mechanism nevertheless provides "for sanctions so punitive as to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* at 972 (quoting *United States v. Ward,* 448 U.S. 249 (1980)). The court identified the *Mendoza-Martinez* factors as: "(1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it

appears excessive in relation to the alternative purpose. assigned." *Williams II,* 832 A.2d at 973.

In applying these factors, only the "clearest proof" that a law is punitive in effect may overcome a legislative categorization to the contrary. *Id.* at 973. The court understood the "clearest proof" standard to indicate that the *Mendoza-Martinez* factors must weigh heavily in favor of a finding of punitive purpose or effect in order to negate the legislature's intention that the Act be deemed civil and remedial. The court also stated that the "clearest proof" standard is "rarely articulated," but that "for present purposes we understand the 'clearest proof' standard to indicate that the *Mendoza-Martinez* factors must weigh heavily in favor of a finding of punitive purpose or effect in order to negate the General Assembly's intention that the Act be deemed civil and remedial." *Id.* After a thorough analysis, the court in *Williams II* found that, on the record before it, the registration, notification and counseling requirements of Megan's Law II had not been demonstrated to be punitive by the requisite degree of proof. *Id.*

However, despite the ultimate finding of constitutionality, the court in *Williams II* was careful to point out the limitations to the application of its holding. The court cited "due deference to the legislative findings and recognition of the present state of the record" as reasons for finding that the registration, notification, and counseling provisions were "reasonably designed to serve the government's legitimate goal of enhancing public awareness and ensuring that offenders do not relapse into harmful behavior." *Williams II,* 832 A.2d at 981. The court pointed to "the absence of competent and credible evidence undermining the relevant legislative findings" as

the reason for giving deference to those findings. *Id.* at 986.

The court also expressed concerns about the issue presently before us—the absence of a mechanism allowing a person's status as an SVP to be re-evaluated. In determining whether Megan's Law II was sufficiently onerous to constitute punishment, the court stated:

"[O]ne of the most troubling aspects of the statute is that the period of registration, notification and counseling lasts for the sexually violent predator's entire lifetime. A reasonable argument could be made that, to avoid excessiveness, the legislature was required to provide some means for a sexually violent predator to invoke judicial review in an effort that he no longer poses a substantial risk to the community. This aspect of the statute may be particularly problematic if the definition of 'sexually violent predator' is incapable of reasonably precise implementation . . . . Notably, however, the position that a means for subsequent judicial review is a necessary feature of any valid registration/notification scheme assumes that, given sufficient time and/or treatment, sexually violent predators can be fully cured of the 'mental abnormality or personality disorder [making them] likely to engage in predatory sexually violent offenses.' " *Id.* at 982-83. (internal citations omitted)

Because the record in *Williams II* was "devoid of any information concerning the prospect of successful treatment of such individuals," the court did not determine whether the omission of a mechanism to invoke judicial review rendered Megan's Law II unconstitutional due to excessiveness. *Id.* Therefore, the court left open the question of whether Megan's Law II could withstand a constitutional challenge in a case where the evidence on

record rebuts the underlying legislative findings and/or proves the possibility of successful treatment for SVPs,[5] inviting challengers to establish such a record.

While the Pennsylvania Supreme Court's ruling in *Williams II* was pending, and after that decision was realeased, the Superior Court heard challenges to the constitutionality of the Megan's Law II legislation similar to the challenge raised before this court. In *Commonwealth v. Haughwout,* 837 A.2d 480 (Pa. Super. 2003), the defendant accepted the invitation to challenge the Act's constitutionality and contended that Megan's Law violated his procedural rights to due process since it did not provide him with a right to petition for reassessment of the SVP status if he no longer has a mental abnormal-

---

5. We recognize that the court in *Williams II* has left the standard for a successful constitutional challenge to Megan's Law II somewhat ambiguous by using language that requires an SVP to be "fully cured" in the same paragraph as language requiring the SVP to demonstrate no remaining "substantial risk to the community." We believe that the only standard constitutionally permissible is that which requires an SVP to demonstrate no remaining "substantial risk to the community." Common sense, our own collective experience, and the current level of psychiatric treatment available to most individuals suggest to us that a standard that requires an SVP to demonstrate a "full cure" is too high a burden to place upon individuals seeking subsequent judicial review. In light of that conclusion, we believe a standard that requires an SVP to demonstrate that he or she is no longer a substantial risk to the community is the correct standard. Given the testimony of record that there is no such thing as a "full cure" for certain sexual personality disorders, we believe a standard that requires a petitioner to prove that he or she is no longer a "substantial risk to the community" will take into account and fully address the legislature's intent to protect the public. Although the record before us is insufficient to show that either a full cure or insubstantial risk can be achieved, we believe that, for purposes of a future challenge, the latter is the correct standard that must be addressed.

ity or personality disorder that makes him likely to engage in sexually violent offenses. However, the record in *Haughwout* provided no information regarding the prospect of successful treatment of SVPs. The Superior Court found that, given the specific legislative findings that SVPs pose a high risk of recidivism, the defendant failed to meet "his formidable burden required to overcome the presumed constitutionality" of the statute. *Id.* at 489.

Similarly, before *Williams II* was decided, the Montgomery County Court of Common Pleas held the notification and counseling provisions of Megan's Law II unconstitutional because they constituted punishment. See *Commonwealth v. Breyer,* 55 D.&C.4th 36 (2001). This order was reversed by the Pennsylvania Supreme Court insofar as it declared the Registration of Sexual Offenders Act unconstitutional and remanded for further proceedings in light of *Williams II.* See *Commonwealth v. Breyer,* 577 Pa. 335, 845 A.2d 766 (2004).

Additionally, the Delaware County Court of Common Pleas adopted the reasoning of the Montgomery County Court in *Breyer* and held that Megan's Law II was unconstitutional for not providing subsequent judicial review upon just cause shown. See *Commonwealth v. Smith,* 55 D.&C.4th 285 (2002). This case, like *Breyer,* was also reversed insofar as it declared the Act unconstitutional and was remanded for further procedings. See *Commonwealth v. Smith,* 577 Pa. 349, 845 A.2d 773 (2004).

Petitioner in the case before us faces the same formidable burdens placed upon other challengers to the Megan's Law II legislation. To overcome these burdens,

petitioner must show that Megan's Law II is punitive in nature and therefore required to conform to due process standards. Because the court in *Williams II* clearly indicated that the intent of the legislature was non-punitive, petitioner must show that the *Mendoza-Martinez* factors weigh heavily in favor of a finding of unconstitutionality to be successful in his claim. Because the court in *Williams II* addressed these factors and left open only the possibility that another record might establish excessiveness, petitioner can only be successful by creating an adequate record on the issue of excessiveness. Ultimately, petitioner must provide this court with sufficient evidence to show that the lifetime registration, notification and counseling provisions of Megan's Law II are sufficiently onerous so as to be excessive in relation to the law's non-punitive purpose of community safety and protection.

As indicated by the court in *Williams II,* petitioner must demonstrate that there is no substantial risk to the community, or that there is the potential for a full cure of the underlying mental abnormality or personality disorder before the lack of judicial review can be found to be excessive. Based on the record before us, we find that petitioner has not provided sufficient evidence to comply with either of these standards.

While the statute and the court in *Williams II* used the term "mental abnormality" in addition to "personality disorder," the term "mental abnormality" is not a psychiatric term. (N.T. 9/28/04, pp. 110, 255-56.) Therefore, we address the issue of whether our record shows the potential for a full cure in terms of personality disorders. Petitioner's evidence submitted at the Megan's Law hear-

ing did not establish that he is curable of any personality disorder. (N.T. 9/28/04, pp. 205, 210.) The Commonwealth's expert, Dr. Veronique Valliere, testified that certain diagnosable conditions, such as pedophilia and paraphilia, are not capable of being cured. (N.T. 9/28/04, pp. 204, 210.) Dr. Valliere testified that doctors do not know how to cure individuals with sexual deviances that motivate sexual crimes and that there is always a potential for such individuals to re-offend in their lifetime. (N.T. 9/28/04, p. 205.) Petitioner's expert witness, Dr. Timothy Foley, also acknowledged that there is no cure for pedophilia and [psychologists] "don't talk about cures very often." (N.T. 9/28/04, p. 143.) Dr. Foley himself testified that if a person has been convicted of a sexual offense and has been found to have a personality disorder, such as pedophilia, paraphilia or antisocial disorder, there is always a risk that that person may re-offend. (N.T. 9/28/04, pp. 174-75.) Based on the content of the record, petitioner has failed to show that a full cure of the underlying personality disorder is possible.

Petitioner has also failed to provide evidence that an SVP may pose a risk that is insubstantial to his or her community after the passage of time and/or the completion of treatment. Much of the expert testimony examined the relationship between age and sexual recidivism. The evidence did not establish that, as an SVP ages, he or she no longer poses a substantial risk to the community. Defendant's expert witness, Dr. Foley, testified that studies show testosterone decreases as age increases and, as a result, sexual offense recidivism decreases with age. (N.T. 9/28/04, p. 55.) Dr. Valliere rebutted the findings of the testosterone studies by noting that such studies failed to take factors such as health, access to victims,

and ageism[6] into account. (N.T. 9/28/04, p. 221.) Moreover, Dr. Valliere cited R. Karl Hanson's literature[7] that, for certain types of offenders, such as those with pedophilia, persistent deviant sexual arousal does not decrease with age. (N.T. 9/28/04, pp. 221-22.) Because petitioner bears a heavy burden of proof and because the literature discussing the relationship between age and recidivism is conflicting and inconclusive, petitioner's evidence regarding age and recidivism is insufficient to meet his burden.

Petitioner also presented evidence that completion of sex offender treatment lowers the risk of recidivism. (N.T. 9/28/04, pp. 57-58.) Petitioner's own expert, however, testified that "a variety of data" exists, that reaches differing conclusions about the effectiveness of treatment in lowering the recidivism rate. (N.T. 9/28/04, p. 58.) As such, petitioner has failed to offer evidence that would establish Megan's Law II is excessive as a civil statute and, thus, unconstitutionally punitive.

## II. *Void for Vagueness*

Petitioner presents two arguments in support of his contention that Megan's Law II is void for vagueness.

---

6. Ageism refers to a known reluctance to convict the elderly. (N.T. 9/28/04, p. 221.)

7. R. Karl Hanson, corrections researcher of the Department of the Solicitor General of Canada, was frequently cited by both petitioner's and the Commonwealth's experts for his literature on sexual offender recidivism. See defendant's supplemental brief to the memorandum of law based on evidentiary hearings, exhibit H: R. Karl Hanson and Monique T. Bussiere, *Predicting Relapse: A Meta-Analysis of Sexual Offender Recidivism Studies,* Journal of Consulting and Clinical Psychology, vol. 66, no. 2 (1998).

Petitioner first argues that the terms of the Act associated with the determination of whether an offender is an SVP are unconstitutionally vague. Specifically, petitioner asserts that the terms "likely," "sexually violent predator," "mental abnormality," and "counseling," as defined by the Act, are incapable of reliable implementation by the SOAB members and result in individuals being deemed SVPs who do not pose a substantial risk to the community.

As previously stated, the petitioner shoulders a heavy burden in establishing the unconstitutionality of a validly enacted statute. *Haughwout,* 837 A.2d at 489. When considering whether a statute is unconstitutionally void for vagueness, a court must determine whether "persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Kopicz,* 840 A.2d at 349 (citing *Commonwealth v. Cotto,* 562 Pa. 32, 37, 753 A.2d 217, 220 (2000)). A statute shall not be deemed unconstitutionally vague where the terms are sufficiently specific so as to prevent arbitrary application. *Id.*

## A. Terms of the Statute

In disposing of petitioner's claim of vagueness as to the terms of the statute, we note that this court is bound by the holdings of *Howe,* 842 A.2d at 436 and *Commonwealth v. Rhoads,* 836 A.2d 159 (Pa. Super. 2003). In *Howe,* the Superior Court found the terms utilized to classify an offender as an SVP could not be more clear. In finding the Act was sufficiently specific, the court explained:

"Only individuals convicted of certain enumerated offenses are subject to an assessment to determine if the

person should be classified as a sexually violent predator due to the individual's mental abnormality or personality disorder that creates a likelihood that the individual would engage in such sexual offenses in the future. To avoid arbitrary or capricious enforcement of Megan's Law II, a thorough assessment is conducted. The term 'mental abnormality' is specifically defined and not vague in that the definition classifies which conditions are ascribed to 'mental abnormality.' In addition, the undefined terms 'personality disorder' and 'likely to engage in' are not vague on their face in that they are sufficiently definite that ordinary people can understand what conduct they prohibit and are not so vague that men of common intelligence must necessarily guess at their meaning and differ as to their application." *Howe,* 842 A.2d at 444.

Likewise, the *Rhoads* panel rejected a void for vagueness challenge by stating:

"We first note that only individuals convicted of an offense enumerated under 42 Pa.C.S. §9795.1 . . . of the Act are subject to an assessment devised to determine if such individual should be classified as a [sexually violent predator] . . . . To further avoid arbitrary or capricious enforcement of the law, a thorough assessment of such individual is conducted pursuant to 42 Pa.C.S. §9795.4(b) . . . before that individual is adjudicated as a 'sexually violent predator.' Given the definitive filtering mechanism offered by section 9795.1 in terms of clearly defining who is subject to a [sexually violent predator] assessment and the exhaustive determinative factors utilized in making such an assessment in accordance with section 9795.4, we find

the statute is sufficiently clear and specific to withstand appellant's constitutional challenge." *Rhoads,* 836 A.2d at 162-63.

As we are bound by the rulings of *Howe* and *Rhoads,* we believe a lengthy discussion of vagueness regarding the terms of the statute is unnecessary and hold that the terms of Megan's Law II are sufficiently clear to withstand petitioner's challenge.

## B. Method of Prediction

Petitioner finally argues that Megan's Law II is void for vagueness based on the methods used by the SOAB when assessing whether to recommend an offender for SVP status. "Vague statutes deny due process of law when they . . . do not set reasonably clear guidelines for enforcement, thus inviting arbitrary and discriminatory enforcement." *South Union Township v. Department of Environmental Protection,* 839 A.2d 1179, 1192 (Pa. Commw. 2003) (citing *Park Home v. City of Williamsport,* 545 Pa. 94, 101, 680 A.2d 835, 838 (1996)). In *Williams II,* the court suggested that a showing "that the offender assessment process is so unreliable that there will be little correlation between those ultimately deemed sexually violent predators and the class of individuals who pose the greatest risk of predation" might be sufficient to render the statute unconstitutionally vague. 832 A.2d at 983. However, the court emphasized that "any conclusion that an assessment of sexually violent predator status is so arbitrary that the consequences to the individual so adjudicated constitute punishment, would have to be grounded upon credible record evidence that the enumerated criteria were non-predictive, or that as-

sessment pursuant to them was inherently unreliable."[8] *Id.* at 984. (footnote omitted)

At trial, the Commonwealth's expert, Dr. Valliere, testified that the SOAB utilizes empirically-guided clinical judgment to make assessments regarding whether an offender is recommended for SVP status. (N.T., 11/08/04, p. 30.) Petitioner's expert, Dr. Foley, testified that actuarial tools are "significantly more accurate" than clinical judgment and that actuarial methods are "state of the art" in terms of making assessments. (N.T., 09/28/04, pp. 89, 105.) In response, Dr. Valliere testified that clinical judgment and empirically-guided clinical judgment are two different processes. (N.T., 11/08/04, pp. 27-28.) Foley essentially conceded this point and admitted that there is "not a huge difference when you have a correctly administered actuarial versus correctly administered explicitly defined empirically-guided clinical judgment." (N.T. 09/28/04, p. 156.)

As we have repeatedly emphasized in this opinion, petitioner faces a heavy burden to clearly demonstrate the unconstitutionality of Megan's Law II. The operative inquiry to determine the unconstitutionality of the methods of prediction employed by the SOAB is not whether the methods are state of the art or even the most accurate available methods. The operative inquiry is whether the methods employed are so unreliable as to

8. In *Williams II,* the void for vagueness issue was not raised before the trial court and the court therefore addressed the vagueness argument in the context of whether vagueness rendered the statute unconstitutionally punitive through execessiveness. In the case sub judice, petitioner has raised the void for vagueness issue at the trial level and we address this issue separate and apart from petitioner's arguments regarding excessiveness.

produce little correlation between offenders deemed SVPs and individuals who actually pose the greatest risk of predation. That record has not been established.

Here, Dr. Foley, while maintaining that more state of the art methods are available, admitted that the methods used by the SOAB produce results that are not significantly different from results produced by the state of the art methods. This evidence does not approach the level of proof needed to overcome petitioner's burden. Therefore, based on the record before us, we decline to find that the methods used by the SOAB in assessing SVP status are so vague as to be unconstitutional.

## CONCLUSION

Our Supreme Court was troubled by the requirement that registration, notification and counseling of an SVP last for his or her lifetime without the opportunity for judicial review. We share that concern. The court found, however, that the record before it was devoid of any information concerning the prospect of successful treatment of SVPs and thus the presumption of constitutional validity was not rebutted. Here, we also find that petitioner has not rebutted this presumption. Therefore, because we hold that petitioner has failed to sustain his heavy burden of proving unconstitutionality, we find the Act to be constitutional as applied.