J-S13034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| J.D.M. | |
| Appellee | No. 1461 WDA 2014 |

Appeal from the Order Entered August 29, 2014
In the Court of Common Pleas of Mercer County
Criminal Division at No: CP-43-CR-0001594-2013

BEFORE:  BENDER, P.J.E., MUNDY, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                        **FILED JULY 14, 2015**

The Commonwealth appeals from the order of the Court of Common Pleas of Mercer County declining to designate Appellee J.D.M. as a sexually violent predator (SVP).  For the reasons stated below, we vacate the order, and remand for proceedings consistent with this memorandum.

The trial court summarized the relevant factual and procedural history as follows:

> [Appellee] was arrested on October 25, 2013, and charged with three (3) counts each of statutory sexual assault, involuntary deviate sexual intercourse, sexual assault, and aggravated indecent assault.  The charges arose out of alleged sexual contact that [Appellee] had over several years with his cousin.  The first alleged contact occurred when the victim was 12 and [Appellee] was 17, and ending when the victim was 15 and [Appellee] was 21.
>
> A preliminary hearing was held on November 1, 2013. [Appellee] was ordered held for trial on all charges.

[Appellee] pled guilty on March 4, 2014, to one count of aggravated indecent assault under [18 Pa.C.S.A. § 3125(a)(8)[1]]. In the colloquy, [Appellee] admitted [to] vaginal intercourse on several occasions with someone under the age of 16 when he was 21 years of age.

A [Pennsylvania's Sex Offender Registration and Notification Act (SORNA)[2]] [h]earing was held on August 29, 2014. The sole witness to testify was Brenda Manno[, a member of the Pennsylvania Sexual Offender Assessment Board]. Her testimony can be summarized as follows:

The evaluation was conducted on May 14, 2014. [Appellee] has no prior criminal history. The victim was a cousin and the first sexual encounter occurred when she was 12 and it involved sexual intercourse. The abuse involved digital penetration with markers and pens and caused bleeding.

_____

[1] Section 3125(a)(8) provides:

Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:

. . .

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A. § 3125(a)(8).

[2] 42 Pa.C.S.A. §§ 9799.10-.41.

An objection to the use of markers and pens was made on the basis of hearsay. The objection was overruled on the grounds it was admissible for purposes of rendering an opinion.

Ms. Manno assessed the statutory factors as follows:

    A. The incident did not involve multiple victims;
    B. The force did not exceed the means necessary to achieve the offense;
    C. The sexual contact was significant in that it included, inter alia, penetration with objects;
    D. The victim was not a stranger;
    E. The victim was 12 when it started and ended when she was 15;
    F. There was no unusual cruelty;
    G. There was a substantial age difference;
    H. There was no history of drug abuse; and
    I. There was no history of mental illness.

Based on these factors, Ms. Manno felt that [Appellee] met the criteria for unspecified paraphilia disorder. [Appellee] further lacked the power to control his conduct. There w[ere] also predatory issues in this case because he used his family relationship to have access to the victim. Hence, Ms. Manno found [Appellee] met the criteria to be a sexually violent predator.

This [c]ourt found [Appellee] not to be a sexually violent predator. This decision was based, in large part, on the Commonwealth's failure to call the victim to corroborate the testimony regarding the use of items to penetrate the victim and the resultant bleeding. Without such testimony that evidence is hearsay and not admissible. It was clear to this [c]ourt that testimony was essential to Ms. Manno's opinion.

[Appellee] was sentenced immediately following the SORNA [h]earing. He received a term of imprisonment of not less than four (4) years nor more than ten (10) years. This appeal followed.

Trial Court Opinion, 10/22/14, at 1-3.

On appeal, the Commonwealth raises the following issues for our review:

1. Did the [t]rial [c]ourt err in determining that the Sexual Offenders Assessment Board expert was not permitted to testify based upon hearsay from the victim, and in finding that permitting the same would be violative of [Appellee]'s Sixth Amendment Confrontation Clause rights?

2. Did the [t]rial [c]ourt err in determining that Appellee is not a sexually violent predator because the Commonwealth did not call the victim to testify?

Commonwealth's Brief at 4.

With respect to the first issue raised by the Commonwealth, as stated, the trial court found Appellee not to be an SVP principally because it believed the Commonwealth's expert opinion was fatally flawed, since its expert relied upon statements made by the victim to police. Trial Court Opinion, 10/22/14, at 3. The trial court viewed the victim's statements as to the Appellee's use of items to penetrate her as essential to the expert's SVP opinion. *Id.* In the absence of the victim testifying at the SVP hearing, the trial court believed the expert's testimony to be based upon, and undermined by, inadmissible hearsay testimony. *Id.* at 6. This assertion of error challenges the trial court's ruling on admissibility of evidence, which we review as follows:

> The standard of review governing evidentiary issues is settled. The decision to admit or exclude evidence is committed to the trial court's sound discretion, and evidentiary rulings will only be reversed upon a showing that a court abused that discretion. A finding of abuse of discretion may not be made merely because

an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Matters within the trial court's discretion are reviewed on appeal under a deferential standard, and any such rulings or determinations will not be disturbed short of a finding that the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case.

***Commonwealth v. Koch***, 106 A.3d 705, 710-11 (Pa. 2014) (quotation marks and citations omitted). With this standard in mind we turn now to the specifics of the trial court's evidentiary ruling regarding the Commonwealth's expert's use of the victim's statements to police.

In ***Commonwealth v. Prendes***, 97 A.3d 337 (Pa. Super. 2014), *appeal denied*, 105 A.3d 736 (Pa. 2014), this Court held that a SOAB expert opinion falls within the general rules regarding expert witnesses. ***Id.*** at 360. As such, a SOAB expert opinion, under Pa.R.E. 703 and 705, may be based upon facts or data the expert has been made aware of or personally observed, so long as experts in the particular field reasonably rely on those kinds of facts or data in forming their opinion on the subject. **The facts and data need not be admissible for the expert's opinion to be admitted.** ***Id.*** at 361. While inadmissible facts or data relied upon by an expert are considered to explain the basis for an expert's opinion and do not constitute substantive evidence, ***id.*** (citing Pa.R.E. 705 and *Comment*), "an expert's opinion, which is rendered to a reasonable degree of professional certainty, **is itself evidence**." ***Commonwealth v. Fuentes***, 991 A.2d 935, 944-45 (Pa. Super. 2010) (*en banc*), *appeal denied*, 12 A.3d 370 (2010) (emphasis

added). As such, the expert's opinion may be sufficient to support an SVP determination by the court. *Id.* at 944-45; *see also Commonwealth v. Charlton*, 902 A.2d 554, 564-65 (Pa. Super. 2006) (expert testimony that defendant met criteria for classification as SVP clearly and convincingly supports trial court determination of SVP). Clearly then, the trial court here erred in   dismissing the expert opinion of the Commonwealth's witness largely because the expert's opinion was predicated upon hearsay statements by the victim to police.

We also find error in the trial court's rationale that there was no evidence the victim's statements to police are the kind of information upon which experts would reasonably rely. Trial Court Opinion, 10/22/14, at 7. An SVP assessment is statutorily defined. *Prendes*, 97 A.3d at 360. By statute, members of the SOAB can, and routinely do, rely on reports that contain data that would not be admissible at trial.

> All State, county and local agencies, offices and entities in this Commonwealth, including juvenile probation officers, shall cooperate by providing copies of records and information as requested by the [State Sexual Offender Assessment Board (SOAB)] in connection with the court-ordered assessment and the assessment requested by the Pennsylvania Board of Probation and Parole or the assessment of a delinquent child under section 6358 (relating to assessment of delinquent children by the State Sexual Offenders Assessment Board). . . .

42 Pa.C.S.A. § 9799.24(c). Information such as arrest warrants, affidavits of probable cause, police reports, charge sheets, victim's statements, polygraph examinations, and written letters are types of information that sex

- 6 -

offender assessment experts routinely rely upon, and their opinions are routinely admitted at SVP hearings. **Prendes**, 97 A.3d at 359-60.

This is not to say that an assessment expert's opinion and the facts relied upon cannot be challenged. Once a SOAB expert testifies to the facts and data upon which his or her opinion is based,

> [t]hen, the rules of evidence place "the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination." **See In re D.Y.** [34 A.3d 177, 183 (Pa. Super. 2011), *appeal denied,* 47 A.3d 848 (Pa. 2012)]. Opposing counsel bears the burden of exposing and exploring "any weaknesses in the underpinnings of the expert's opinion." **See id.**

**Id.** at 360-61.

Thus, contrary to the trial court's belief, expert opinions may be based on information contained in reports despite issues regarding admissibility at trial. The reliability of the information contained in these documents, however, can be tested at the SVP hearing by defense counsel, but such challenges involve the weight of the opinion, not its admissibility. **Fuentes**, 991 A.2d 944-45 (citing **Commonwealth v. Feucht**, 955 A.2d 377, 382 (Pa. Super. 2008)). Here, Appellee's cross-examination consisted of merely asking the expert whether the details of the vaginal penetration, as she relayed them at the SVP hearing, were described in Appellee's guilty plea. The expert replied the transcript of the guilty hearing was not available at the time of the assessment. Appellee did not ask any further questions. It would seem, therefore, that Appellee thought he could undermine the

expert's testimony by merely pointing out she did not read the transcript of the guilty plea hearing. While this may have been helpful, it was not necessary. In **Prendes**, this Court quoted with approval the following from the trial court opinion:

> It was not necessary that [the expert] read the guilty plea colloquy and trial testimony before forming her opinion. The facts upon which an expert relies can be disclosed either by asking the expert to "assume the truth of facts the expert has seen or read" or by asking a "hypothetical question." **See** Pa.R.E. 705, comment.[3]

**Prendes**, 97 A.3d at 362. The trial court, here, therefore, erred to the extent it held the expert impermissibly relied on the victim's statements to the police.

With respect to the Commonwealth's second issue, the trial court, in an apparent attempt to buttress its conclusion that the Commonwealth's expert's opinion was fatally flawed due to a failure of the victim to testify at the SVP proceedings, stated that the Sixth Amendment to the United States Constitution, as explained in **Crawford v. Washington**, 541 U.S. 36 (2004), entitled Appellee to confront the victim in the SVP hearing. Citing **Commonwealth v. Curnutte**, 871 A.2d 839 (Pa. Super. 2005), the trial court held this was so because the same constitutional safeguards that apply

_____

[3] It is worth noting that Appellee here did not present an expert witness to challenge the Commonwealth expert's conclusions, or challenge the expert's diagnosis except for a brief exchange meant to point out the information relied upon by the expert was not contained in the transcript of the guilty plea.

at trial apply at SORNA hearings. Trial Court Opinion, 10/22/14, at 7. We disagree.

The Confrontation Clause in the Sixth Amendment to the United States Constitution, by its own terms, applies only to defendants in criminal trials.[4] *See, e.g., Commonwealth v. Wantz*, 84 A.3d 324, 337 (Pa. Super. 2014); *see also Barber v. Page*, 390 U.S. 719, 725 (1968) ("[R]ight to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness.") It is also established that an SVP hearing is not a criminal trial; it is not even a criminal proceeding. *Commonwealth v. Howe*, 842 A.2d 436, 445-46 (Pa. Super. 2004); *Commonwealth v. Haughwout*, 837 A.2d 480, 488 (Pa. Super. 2003); *see also Commonwealth v. Masker*, 34 A.3d 841, 846-47 (Pa. Super. 2011) (Bowes, J., concurring and dissenting). Nowhere did the trial court explain how it concluded the protection afforded under the Confrontation Clause applies to SVP proceedings.[5]

To the extent the trial court relied on *Curnutte* for its conclusion the Sixth Amendment right to confrontation applies in an SVP proceeding,

_____

[4] The Confrontation Clause, in relevant part, provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

[5] The mere fact the Sixth Amendment does not appear to be applicable to SVP proceedings does not mean that Appellee is not entitled to due process. This issue, however, was not raised, let alone addressed, by any party below.

*Curnutte* is inapposite. The issue in *Curnutte* was whether a defendant is entitled to assistance of a court-appointed psychological expert at an SVP proceeding when he is unable to procure one on his own. *Curnutte*, 871 A.3d at 841. This Court held that a defendant has such a right because our legislature, under SORNA, expressly granted a defendant the right to counsel and to call an expert witness at an SVP proceeding. We reasoned that this statutory right to counsel would be rendered meaningless if an indigent defendant is not provided the tools necessary to counter the Commonwealth's evidence. *Id.* at 844. This is especially so where the central issues in an SVP proceeding are determined by expert testimony. *Id.* at 843. This right to an expert, when a proper showing is made for its necessity, arises solely by way of a statutory right and not by way of the United States Constitution.

*Curnutte* also is inapposite for another reason. In *Curnutte*, as noted above, we held that an indigent defendant subject to an SVP hearing under the provisions of Megan's Law II has a procedural due process right to a court-appointed psychological expert. *Curnutte*, therefore, is a due process—not a confrontation right—case. The two concepts may overlap, but they are not the same. *See Crawford*, 541 U.S. at 61; *see also California v. Green*, 399 U.S. 149, 172-89 (1970) (Harlan, J., concurring). Additionally, while this Court did mention in *Curnutte*, in passing, that the same safeguards available to defendants at trial are also available to

- 10 -

defendants in SVP hearings, that phrase is an *obiter dictum*, not the holding of the case. As such, **Curnutte** is not dispositive of the issue raised here. Finally, the trial court erred in equating the Confrontation Clause with hearsay. Again, the two concepts are distinguishable. **See Green,** 399 U.S. at 155; **Commonwealth v. Chmiel**, 738 A.2d 406, 420 (Pa. 1999).

The trial court accordingly erred in its determination that Appellee was not an SVP to the extent this conclusion was premised upon the inability of Appellee to confront the victim at his SVP hearing.

Finally, we address the trial court's rationale that the absence of some SVP factors under 42 Pa.C.S.A. § 9799.24 weighed against the finding of Appellee being a sexually violent predator. Trial Court Opinion, 10/22/14, at 5. This appears to raise an issue of sufficiency as opposed to one of admissibility. We do not need to address a sufficiency issue, given our disposition on the admissibility issue. However, given we are remanding this matter to the trial court for further proceedings, we feel compelled to briefly comment on this matter.

While we do not question the trial court's ability to weigh the factors set forth in 42 Pa.C.S.A. § 9799.24, we note it is improper to consider these factors "as a checklist where each factor weighs, in some absolute fashion, either for or against an SVP classification." **Commonwealth v. Meals**, 912 A.2d 213, 222 (Pa. 2006). Although these non-exclusive factors must be considered, a review of these factors makes clear that all of them may not

be applicable in every SVP case. It appears the trial court failed to appreciate that "the presence or absence of certain factors may simply suggest the presence, or absence, of one or more particular types of abnormalities[, and that there is] more than one pathway to an issue of pathology." *Id.*[6]

In particular, on the age characteristic of Appellee, the trial court held that the record did not support the expert's determination of a substantial age differential. The expert stated there was a five-year age differential, and found this difference to be substantial. The trial court did not question the expert's conclusion about the age differential (between five and six years), only the conclusion that the age differential was substantial. Specifically, the court noted it was not substantial because the victim was Appellee's cousin and Appellee was a minor when the criminal conduct

_____

[6] Additionally, as we noted in *Prendes*:

> With regard to the various assessment factors . . ., there is no statutory requirement that all of them or any particular number of them be present or absent in order to support an SVP designation. The factors are not a checklist with each one weighing in some necessary fashion for or against SVP designation. [*Commonwealth v. Brooks*, 7 A.3d 852, 863 (Pa. Super. 2010)]. Thus, "[t]he Commonwealth does not have to show that any certain factor is present or absent in a particular case." *Id.*

*Prendes*, 97 A.3d at 358-59. *See also* N.T. SVP Hearing, 8/29/14, at 10 (the expert testified: "It's not a plus and minus situation. . . . The [absent] factors do[] not necessarily mean that that goes against that person being deemed a sexually violent predator.").

started. We are not sure, nor does the trial court provide any explanation, how the blood relation between the parties or Appellee being a minor when the criminal conduct started makes the age differential more or less substantial, and if not substantial, how this affects an SVP determination. The Crimes Code criminalizes the conduct at issue here if, *inter alia*, there is at least a four-year age differential between the parties and the victim is under the age of 16. **See** 18 Pa.C.S.A. § 3125(a)(8). It may be that this age differential weighs differently in SVP determinations, but we fail to see how this age differential, deemed sufficient for criminal prosecution by our legislature, could mitigate against an SVP determination. The fact that Appellee was a minor is not a defense to the offense here. **See id.** Moreover, Appellee pled guilty to engaging in sexual intercourse with his 16-year old victim when he was 21 years of age. Because we fail to see the relevance of any blood relation to age, and disagree that a minimum age differential deemed sufficient for criminal prosecution could mitigate against an SVP determination, we hold the trial court, to the extent it based its denial of an SVP determination upon these reasons, abused its discretion.

Order vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

- 13 -

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/14/2015