J-S70019-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| YVETTE THOMAS, | : | |
| | : | |
| Appellant | : | No. 79 EDA 2014 |

Appeal from the Judgment of Sentence October 22, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0007124-2013

BEFORE:  DONOHUE, LAZARUS and PLATT*, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED DECEMBER 04, 2015**

Yvette Thomas ("Thomas") appeals from the judgment of sentence entered following her convictions of conspiracy, theft by extortion, and witness or informant taking bribe.[1]  Following our review, we affirm in part and vacate in part.

Thomas' convictions arise out of the following sequence of events.  In September 2012, Quentin Johnson fired a gun multiple times into a neighboring residence shared by Thomas and Justin Singleton ("Singleton").  As a result of Thomas and Singleton reporting this to the police, Quentin Johnson was arrested on attempted murder charges.  N.T., 9/18/13, at 13.  In November 2012, Singleton approached Quentin's wife, Jerii Johnson ("Ms. Johnson"), between six and nine times, offering not to appear in court

---

[1] 18 Pa.C.S.A. §§ 903, 3923(a)(1), 4909.

*Retired Senior Judge assigned to the Superior Court.

against Quentin in exchange for money. *Id.* at 16-17. Singleton indicated that he wanted the money so that he could perform repairs on his home. *Id.* at 16. Ms. Johnson rebuffed all of Singleton's offers. *Id.* During the same period of time in November 2012, Thomas approached Ms. Johnson and told her that in exchange for $105, Thomas and Singleton would leave Ms. Johnson alone. *Id.* at 19. Thomas indicated that she needed the $105 for her pharmacy license. *Id.* Ms. Johnson agreed to give Thomas the money the day before Thanksgiving; however, on that day, Thomas did not show up to collect the money, as they agreed she would. *Id.* at 20-21.

The day after Thanksgiving, November 23, 2012, Singleton appeared at Ms. Johnson's home and demanded that she give him money, even going so far as to say that he was going to drive her to an ATM to withdraw the money. *Id.* at 18. Ms. Johnson assumed that Singleton was talking about the money she had agreed to give Thomas. *Id.* at 19. Ms. Johnson did not get in Singleton's car; rather, she drove her own car, with her daughter and her daughter's boyfriend as passengers, to her preferred bank in Cheltenham. *Id.* at 21. Singleton, Thomas, and another woman followed Ms. Johnson in another car. *Id.* at 22. Singleton parked directly next to Ms. Johnson in the bank's parking lot and remained in his car while Ms. Johnson and her daughter's boyfriend were in the bank. *Id.* at 27. When they arrived at the bank, Ms. Johnson filled out a withdrawal slip and wrote "For Yvette and Justin" and "I'm scared" on the back of it. *Id.* at 24-25;

Commonwealth's Exhibit C-1. As she handed it to the teller, she told the teller to read the withdrawal slip and to remember her face and the address on her account in case something happened to her. *Id.* at 26. Ms. Johnson withdrew $205. She kept $100 for herself and placed $105 in an envelope. *Id.* at 26. When she exited the bank, Singleton and Thomas were sitting in their vehicle. *Id.* at 27. She handed the envelope to Singleton and said "something along the lines about this being over with[.]" *Id.* at 28. Ms. Johnson then left the bank parking lot and proceeded to run a few errands before returning home. *Id.* at 29. When she arrived home, there were multiple police officers on her street and Singleton and Thomas had been taken into custody. *Id.* Following a bench trial, Thomas was convicted of the offenses set forth above and sentenced to two one-year terms of probation, ordered to run concurrently. Trial Court Order, 10/22/13. This timely appeal followed.

Thomas presents the following three issues for our review:

1. Did not the [trial] court err, abuse its discretion and violate [Thomas'] federal and state rights to present a defense, due process and confrontation, where the court failed to allow counsel to pursue a legitimate and critical line of questioning regarding the complaining witness'[] bias and motive to fabricate the events at issue in order to protect her husband?

2. Was not the evidence of bribery insufficient where it was only [Thomas'] co-defendant, and not she, who allegedly asked for and received money in return for not testifying against the complainant's

- 3 -

husband; there was no proof that [Thomas] intimidated or attempted to intimidate the witness, as is required under 18 Pa.C.S. § 4952[,] the predicate offense of 18 Pa.C.S. § 4909, and [Thomas] was not charged with conspiracy to bribe nor did the Commonwealth alleged or argue accomplice liability?

3. Was not the evidence of theft by extortion[,] or a conspiracy to do so, insufficient where [Thomas] was charged under 18 Pa.C.S. § 3923(a)(1) which requires a threat to commit another crime, and there was no proof of any threat made by [Thomas] to do anything?

Thomas' Brief at 4.

Thomas' first issue challenges the trial court's limitation of her cross-examination of Ms. Johnson. Specifically, she argues that in two instances, the trial court impermissibly limited her questioning of Ms. Johnson regarding her alleged bias and motive to lie, as Thomas' complaints led to the arrest of Ms. Johnson's husband. Thomas' Brief at 21.

> The determination of the scope and limits of cross-examination are within the discretion of the trial court, and we cannot reverse those findings absent a clear abuse of discretion or an error of law. An abuse of discretion is not a mere error in judgment, but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law.

***Commonwealth v. Handfield***, 34 A.3d 187, 210 (Pa. Super. 2011) (citations omitted).

In her court-ordered statement of matters complained of pursuant to Pa.R.A.P. 1925(b), Thomas did not identify any particular instance during

which the trial court allegedly curtailed her cross-examination of Thomas. Indeed, the record reveals that the first time Thomas identifies the specific instances upon which her claim is based is in her appellate brief. The record reveals a substantial number of objections by the Commonwealth to Thomas' questioning of Ms. Johnson. By failing to identify which of these instances form the basis for her claim, Thomas failed to present this issue to the trial court in a manner in which the trial court could meaningfully respond. As such, Thomas effectively failed to raise this issue before the trial court. It is well-established that claims cannot be raised for the first time on appeal. *See* Pa.R.A.P. 302(a); *Commonwealth v. Strunk,* 953 A.2d 577, 579 (Pa. Super. 2008); *Commonwealth v. Haughwout*, 837 A.2d 480, 486 (Pa. Super. 2003) (issues, even of constitutional dimension, are waived if not raised in the court below). Accordingly, we find this issue waived.[2]

Thomas' remaining two issues challenge the sufficiency of the evidence supporting her convictions.

---

[2] The importance of this rule is obvious here. As Thomas did not identify which rulings by the trial court formed the basis for her claim, the trial court picked three instances upon which it apparently assumed Thomas' claim was based. Trial Court Opinion, 1/28/15, at 8-9. None of the instances that the trial court picked is the same as the two instances Thomas later identified as the bases for her claim in her appellate brief. Notably, the trial court addressed instances involving objections to questioning by Thomas' counsel, but Thomas has based her entire argument on ruling regarding the questioning of Ms. Johnson by her co-defendant's counsel.

- 5 -

> Our review of a challenge to the sufficiency of the evidence is well-established. We review the evidence in the light most favorable to the verdict winner to determine whether there is sufficient evidence to allow the jury to find every element of a crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

**Commonwealth v. Rogal**, 120 A.3d 994, 1000-01 (Pa. Super. 2015) (quoting **Commonwealth v. Tejada**, 107 A.3d 788, 792-93 (Pa. Super. 2015)).

Thomas first challenges her conviction of witness or informant taking a bribe under 18 Pa.C.S.A. § 4909 ("taking a bribe"). The definition of this crime states that "[a] person commits a felony of the third degree if he solicits, accepts or agrees to accept any benefit in consideration of his doing any of the things specified in section 4952(a)(1) through (6) (relating to intimidation of witnesses or victims)." 18 Pa.C.S.A. § 4909. The "things specified in section 4952(a)(1) through (6)" are:

(1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

(2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.

(3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

(4) Give any false or misleading information or testimony or refrain from giving any testimony, information, document or thing, relating to the commission of a crime, to an attorney representing a criminal defendant.

(5) Elude, evade or ignore any request to appear or legal process summoning him to appear to testify or supply evidence.

(6) Absent himself from any proceeding or investigation to which he has been legally summoned.

18 Pa.C.S.A. §4952(a)(1)-(6).

Thomas states that she was not charged with conspiracy to commit taking a bribe and argues that there is no evidence that she told Ms. Johnson that she would not go to court in exchange for money. Further, she points out that Ms. Johnson gave the money to Singleton, not to her. Thomas' Brief at 30-32. Without evidence of a *quid pro quo*, Thomas argues, her conviction cannot stand. *Id.* at 32-33.

First, we disagree with Thomas that she was not charged with conspiracy with regard to taking a bribe. The criminal information charges her with conspiracy as to the events of November 23, 2012, but does not state that it is charged specifically with regard to either taking a bribe or theft by extortion. Criminal Information, 6/14/13. The offenses of taking a bribe and theft by extortion also were based on the events of November 23, 2012. *See id.* Accordingly, we conclude that the Commonwealth's charge of conspiracy was sufficient to charge Thomas with conspiracy as to both taking a bribe and theft by extortion. For the reasons below, however, we conclude that the evidence was insufficient to sustain Thomas' conviction of taking a bribe as either the principle actor or a co-conspirator.

As set forth above, the record reveals that following Quentin Johnson's arrest, Singleton approached Ms. Johnson between six and nine times asking for money and telling her that "they" would not testify in court in exchange for money. N.T., 9/18/13, at 16-17. He did not state that Thomas would also not testify in court, but Ms. Johnson believed that this was implied. *Id.* at 17. Thomas never asked Ms. Johnson for money in exchange for not appearing in court. *Id.* at 69. As such, there is no evidence to support a finding that Thomas, herself, solicited money in exchange for not appearing for the court proceedings involving Mr. Johnson.

With regard to co-conspirator liability, we begin with the definition of conspiracy:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> >
> > (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

"A conviction for criminal conspiracy … is sustained where the Commonwealth establishes that the defendant entered an agreement to commit or aid in an unlawful act with another person or persons with a shared criminal intent and an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Lambert***, 795 A.2d 1010, 1016 (Pa. Super. 2002) (en banc) (citation omitted).

Viewing the evidence in the light most favorable to the Commonwealth, we cannot conclude that it supports a finding that Thomas and Singleton entered into an agreement whereby they would agree to solicit money from Ms. Johnson in exchange for not appearing in court. We reiterate that following Quentin Johnson's arrest, Singleton approached Ms. Johnson many times, offering that "they" would not go to court if Ms. Johnson gave him money, but never directly stated that Thomas would not

- 9 -

testify in exchange for money. N.T., 9/18/13, at 16. *Id.* Ms. Johnson testified that Thomas never offered to withhold her testimony (much less Singleton's) in exchange for money. *Id.* at 69. When Thomas did approach Ms. Johnson, she offered only that she and Singleton would leave her alone in exchange for money. *Id.* at 20. The different requests by Singleton and Thomas preclude a finding that they shared an agreement to commit this crime, i.e, to solicit a bribe in exchange for a promise not to appear in court. As such, no conspiracy can be established with regard to this offense.

Thomas next argues that her conviction of theft by extortion is improper because the evidence was insufficient to establish the elements of the crime as charged. Theft by extortion is defined as follows:

> **(a) Offense defined**.--A person is guilty of theft if he intentionally obtains or withholds property of another by threatening to:
>
> **(1) commit another criminal offense**;
>
> (2) accuse anyone of a criminal offense;
>
> (3) expose any secret tending to subject any person to hatred, contempt or ridicule;
>
> (4) take or withhold action as an official, or cause an official to take or withhold action;
>
> (5) bring about or continue a strike, boycott or other collective unofficial action, if the property is not demanded or received for the benefit of the group in whose interest the actor purports to act;
>
> **(6) testify or provide information or withhold testimony or information with respect to the legal claim or defense of another**; or

> (7) inflict any other harm which would not benefit the actor.

18 Pa.C.S.A. § 3923(a) (emphasis added). As Thomas points out, the Commonwealth charged her explicitly under § 3923(a)(1) only. **See** Criminal Information, 6/14/13. As such, to convict Thomas of this offense, the Commonwealth was required to prove that Thomas obtained money by threatening to commit another criminal offense.

The evidence reveals that Ms. Johnson agreed to give Thomas $105 for her pharmacy license in exchange for Thomas' offer that she and Singleton would leave Ms. Johnson alone. It was this promise alone that induced Ms. Johnson's acquiescence. The trial court concluded that viewing this evidence in the light most favorable to the Commonwealth, Thomas' actions amounted to a threat to harass Ms. Johnson if she did not comply (especially in light of the fact that she and Singleton had already approached her up to ten times in the span of just over a month seeking money), thereby establishing a threat to commit another crime, as is required by § 3923(a)(1). **See** Trial Court Opinion, 1/28/15, at 7. We agree.

Harassment is defined, inter alia, as "engag[ing] in a course of conduct or repeatedly commit[ing] acts which serve no legitimate purpose[.]" 18 Pa.C.S.A. § 2709(a)(3). Threating to continue to contact Ms. Johnson for money for her pharmacy license satisfies the definition of harassment in § 2709(a)(3), as it is a threat to continue a course of conduct that serves no

legitimate purpose. As such, we agree that when viewing the evidence, and all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the evidence is sufficient to support a finding that Thomas threatened to commit another crime (i.e., harass Ms. Johnson) if her demands for money were not met, and therefore that the evidence is sufficient to support Thomas' conviction.

As we have found the evidence insufficient to support Thomas' conviction of taking a bribe under 18 Pa.C.S.A. § 4909, we reverse that conviction and vacate the judgment of sentence entered thereon. The trial court sentenced Thomas to a term of one year of probation on this conviction, which was ordered to run concurrently with the probationary sentence imposed on the theft by extortion conviction. Accordingly, vacating this judgment of sentence does not disturb the trial court's sentencing scheme, and so we do not need to remand this case for resentencing. *Cf. Commonwealth v. Barton-Martin*, 5 A.3d 363, 370 (Pa. Super. 2010) (providing that where vacating a sentence disrupts a trial court's overall sentencing scheme, this Court will remand to the trial court for resentencing).

Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.

Lazarus, J. joins the Memorandum.

Platt, J. concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/4/2015