J. S41028/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA :   IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
v.                               :
:
WILLIAM STERN                    :
          Appellant             :
:   No. 3308 EDA 2015

Appeal from the Judgment of Sentence August 21, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division No(s): CP-46-CR-0001919-2014

BEFORE: BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E. [*]

MEMORANDUM BY DUBOW, J.:                    **FILED AUGUST 05, 2016**

Appellant, William Stern, appeals from the Judgment of Sentence

entered August 21, 2015, in the Court of Common Pleas of Montgomery

County.   After careful review, we conclude that (i) the evidence was

sufficient to support a finding that Appellant was a sexually violent predator

("SVP"); and (ii) the trial court did not abuse its discretion or impose an

unreasonable sentence where Appellant plead guilty to multiple counts of

rape and involuntary deviate sexual intercourse for the repeated, escalating,

sexual abuse of his minor son over a six-year period.   Therefore, we affirm.

The relevant facts, as summarized by the trial court, are as follows.

_____

[*] Former Justice specially assigned to the Superior Court.

The victim in this case is [Appellant's] biological son. On January 30, 2014, a friend of the victim, a fellow student at Norristown Area High School, informed a police officer that his friend, the victim, had disclosed to him that his father had been sexually assaulting him for many years.

On February 11, 2014, when the victim was 18 years old, he reported to the police that his biological father had sexually assaulted him since he was 11 years old. The first sexual assault was in September, 2007 (the month in which the victim turned 12). [Appellant] told him that he "wanted to see how he was developing sexually." He showed the victim a pornographic video on his laptop. [Appellant] then manually masturbated the victim. [Appellant] asked the victim about his sexual preference and "kept telling" him that it was "ok, and that there was nothing wrong." The victim reported that the sexual assaults continued "bi-weekly from that time until the present." The assaults progressed over time into mutual oral sex and mutual anal intercourse. The victim stated that oral sex occurred "probably close to 100 times, if not more." The victim reported that he never ejaculated, but that [Appellant] ejaculated "every time," into the victim's mouth. Intercourse occurred more than seven times. The victim reported that he grew up thinking, when he was younger, that it was "between every father and son." The victim was advised by the police to leave the home and seek a Protection From Abuse Order. The last sexual assault occurred on February 3, 2014. The victim stated, "I thought it was my fault that it was happening." He reported that his father was "everything I had" and that he had "no other way to live." "The way I saw it, I was stuck. I didn't have a choice."

In an intercepted telephone conversation between the victim and his father, [Appellant] admitted the sexual assaults but stated that the victim "never said no." He told the victim, "All I ever did was ask. And, and, and you said, okay." [Appellant] told the victim in that telephone conversation that "there would be no more sex," if the victim returned home.

[Appellant] gave a statement to the police after he was arrested on February 19, 2014. He admitted that he had engaged in sexual activity with his son, including manual masturbation, oral sex, and anal intercourse. He admitted showing the victim adult pornography, including homosexual pornography. He admitted that he knew the sexual encounters were wrong, illegal and no

part of the normal father-son relationship. When asked if he had anything to add to his statement, [Appellant] stated that the victim "never said anything that would indicate any problems or issues or that he was being forced. Therefore, it is my belief that it was voluntary."

The victim began living with [Appellant] in March of 2004 when the victim would have been eight years old. [Appellant] had little contact with the victim prior to 2004. He obtained custody of the victim after the victim's mother was arrested in New Mexico for multiple felonies. The victim lived with [Appellant] until these crimes came to light.

Trial Court Opinion, dated 1/12/16, at 3-5.

On February 27, 2015, Appellant entered an open plea of guilty before the Honorable William T. Nicholas to two counts of Rape by Forcible Compulsion, one of which was with a victim under 16 years of age; two counts of Involuntary Deviate Sexual Intercourse by Forcible Compulsion, one of which was with a victim under 16 years of age; one count of Corruption of a Minor; and one count of Incest of a minor under 13 years of age.[1]

Judge Nicholas deferred sentencing and ordered a presentence investigation ("PSI"), a psychosexual evaluation, and a Sexually Violent Predator ("SVP") Assessment. On August 21, 2015, Judge Nicholas held a sexually violent predator hearing, at which both sides presented expert testimony and argument. Crediting the expert testimony of the Commonwealth's expert over Appellant's expert, Judge Nicholas concluded

---

[1] 18 Pa.C.S. § 3121(a)(1); 18 Pa.C.S. § 3123(a)(1); 18 Pa.C.S. § 6301(a)(1)(ii); and 18 Pa.C.S. § 4302(b)(1), respectively.

that, by clear and convincing evidence, Appellant is an SVP pursuant to 42 Pa.C.S. § 9799.24. N.T., 8/21/15, at 215-19.

After hearing additional testimony and arguments, Judge Nicholas then sentenced Appellant as follows: 10 to 20 years of imprisonment for each count of Rape, to run concurrent to one another; 10 to 20 years of imprisonment for each count of Involuntary Deviate Sexual Intercourse, to run concurrent to one another and consecutive to the Rape sentences; 5 to 10 years of imprisonment for the count of Incest, to run consecutive to the sentences for Involuntary Deviate Sexual Intercourse; and 3 ½ to 7 years of imprisonment for Corruption of a Minor, to run concurrent to the sentence for Incest. The aggregate sentence is 25 to 50 years of imprisonment.

Appellant filed a post-sentence motion challenging his classification as an SVP and alleging that his sentence was manifestly unfair and unreasonable. Both parties submitted briefs to the trial court on those issues. On October 20, 2015, the trial court denied Appellant's post-sentence motion.

Appellant filed a timely Notice of Appeal on November 2, 2015. The trial court and Appellant both complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the two issues he preserved in his post-sentence motion, namely:

> 1. Did the Honorable Trial Court err in finding that the Appellant (i) has a mental abnormality or disorder making him likely to engage in predatory sexual violent offenses and (ii) meets the statutory criteria to be considered a sexually violent predator?

2. Did the Honorable Trial Court abuse its discretion in imposing a sentence that was manifestly unreasonable and, essentially, a life sentence given the Appellant's age?

Appellant's Brief at 3.

In his first issue, Appellant avers that his SVP determination cannot stand because it is predicated on his diagnosis as a pedophile, and the Commonwealth introduced insufficient evidence that the victim in this case was pre-pubescent.  This Court will review a claim that the trial court relied upon insufficient evidence when designating a defendant as an SVP under the following standard:

> A challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review. The appropriate standard of review regarding the sufficiency of the evidence is whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offenses. As a reviewing court, we may not weigh the evidence and substitute our judgment for that of the fact-finder. Furthermore, a fact-finder is free to believe all, part or none of the evidence presented.
>
> At the hearing prior to sentencing the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator. Accordingly, in reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied.

*Commonwealth v. Haughwout*, 837 A.2d 480, 484 (Pa. Super. 2003) (citations and quotations omitted).

As our Supreme Court has made clear, this Court is limited to "simply assessing the legal sufficiency" of the evidence presented; we may neither reweigh the evidence nor require greater proof than is required by the statute. **Commonwealth v. Meals**, 912 A.2d 213, 214 (Pa. 2005). In assessing the legal sufficiency, this Court must consider the "expert opinion that, to a reasonable degree of professional certainty, [Appellant] was a pedophile." **Id.** at 223. Our role as an appellate court does not permit us to pick apart, on appeal, the merits of that diagnosis. **Id.** The diagnosis itself is evidence, and any attack on the underlying merits of the opinion goes to "the weight, and not the sufficiency, of the expert's evidence." **Id.** at 224.

In the instant case, Judge Nicholas has authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record and relevant case law, and discussing each of the factors considered in an SVP determination. After a careful review of Appellant's argument and the record, we affirm the trial court's determination that Appellant is an SVP on the basis of that Opinion. Trial Court Opinion, dated 1/12/16, at 5-11.

In his second issue, Appellant challenges the discretionary aspects of his sentence. A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. **See Commonwealth v. Hill**, 66 A.3d 359, 363 (Pa. Super. 2013). Rather, where, as here, the appellant has preserved the sentencing challenge for appellate review by raising it at sentencing or in a timely post-sentence motion, the appellant must (1)

"include in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[,]" pursuant to Pa.R.A.P. 2119(f); and (2) "show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." *Id.* at 363-64.

In the instant case, Appellant filed a timely notice of appeal and a timely post-sentence motion. He also included a separate Pa.R.A.P. 2119(f) statement in his appellate brief. Moreover, Appellant's claim—that the trial court imposed an unreasonable sentence while ignoring the sentencing guidelines and relevant sentencing criteria—presents a substantial question for our review. *See Commonwealth v. Scassera*, 965 A.2d 247, 250 (Pa. Super. 2009) (holding that a claim that the sentencing court failed to consider the applicable sentencing guidelines, prior to exceeding them, presents a substantial question); *Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (holding that an "[a]ppellant's contention that the sentencing court exceeded the recommended range in the Sentencing Guidelines without an adequate basis raises a substantial question for this Court to review."). *See also Commonwealth v. Riggs*, 63 A.3d 780, 786 (Pa. Super. 2012) (finding a substantial question exists where appellant claims "that the trial court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of Appellant, as 42 Pa.C.S.A. §

9721(b) requires, and instead focused on the injuries suffered by the complaining victims.").

Accordingly, we turn to the merits of Appellant's claim, mindful of our standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted).

Where a trial court imposes a sentence outside of the sentencing guidelines, 42 Pa.C.S. § 9721(b) requires the trial court to provide, in open court, a "contemporaneous statement of reasons in support of its sentence." *Commonwealth v. Bowen*, 55 A.3d 1254, 1264 (Pa. Super. 2012). To satisfy the requirements of Section 9721(b), the trial court must:

> demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.

*Id.* (brackets and citation omitted).

The on-the-record disclosure requirement does not require the trial court to make "a detailed, highly technical statement." ***Commonwealth v. Hunter***, 868 A.2d 498, 514 (Pa. Super. 2005). Where the trial court has the benefit of a presentence investigation ("PSI"), our Supreme Court has held that "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) (discussing ***Commonwealth v. Devers***, 546 A.2d 12, 18-19 (Pa. 1988)). Where the trial court has reviewed the PSI, it may properly "satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the [PSI]; thus properly considering and weighing all relevant factors." ***Id.***

Finally, where the trial court deviates above the guidelines, this Court may only vacate and remand a case for resentencing if we first conclude that "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S. § 9781(c)(3). Although the Sentencing Code does not define the term "unreasonable," our Supreme Court has made clear that "rejection of a sentencing court's imposition of sentence on unreasonableness grounds [should] occur infrequently, whether the sentence is above or below the guideline ranges, especially when the

unreasonableness inquiry is conducted using the proper standard of review."

***Commonwealth v. Walls***, 926 A.2d 957, 964 (Pa. 2007).

In the instant case, the trial court sentenced Appellant to the statutory maximum on each of six counts, running one half of those sentences consecutive to one another. Although these sentences fell outside of the sentencing guidelines, we do not agree with Appellant that the trial court abused its discretion or otherwise erred in imposing an aggregate sentence of 25 to 50 years of imprisonment.

We begin our analysis by emphasizing the events which immediately proceeded the trial court's imposition of sentence. Although Appellant alleges the trial court merely paid lip service to a myriad of sentencing factors, the record of events immediately preceding the court's imposition of sentence belie Appellant's claim. Not only did the trial court have the benefit of a PSI, but the trial court imposed sentence immediately following hours of testimony and arguments regarding, *inter alia*: (i) Appellant's age and background, including his employment history and lack of criminal record; (ii) Appellant's rehabilitative needs and efforts to date; (iii) community support for Appellant; (iv) Appellant's willingness to plead guilty; (v) the details and seriousness of the offenses; and (vi) the impact of the offenses on the victim and the community.[2]

---

[2] The trial court imposed sentence following almost an entire day's worth of evidence and argument. The SVP proceedings commenced at 9:50 am and

Moreover, prior to imposing sentence, the trial court made a lengthy statement, on the record, explaining its decision:

All right. The Court has the responsibility of fashioning a sentence and explaining the reasons for that sentence. And as judges, we have no greater responsibility than considering a sentence where the person to be sentenced presents with no prior criminal history but the offenses committed are serious, not to say horrendous and vile in the extreme. Mr. Stern has acknowledged that much.

The Sentencing Code directs the Court to consider a sentence where a sentence of confinement is consistent with the need to protect the public, consistent with the gravity of the - - of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the Defendant.

We have presentence investigations done. And we have sentencing hearings. And we've been at this for the better part of the entire day to consider the facts of this case and to consider Mr. Stern's involvement and his personal situation. We sentence an individual. We sentence the crimes, but we sentence the individual as well.

So we take everything into account, everything that is reflected in the reports. And, certainly, I take into account the statements that [defense counsel] provided with respect to the family and friends that are here in support of Mr. Stern.

The Court first must consider the seriousness of the offense. And no one who has been in this courtroom could fail to come to the conclusion that these offenses were vile and horrendous in the extreme.

[The Commonwealth's Attorney], I think, correctly points out we owe our children love and nurture. We don't victimize our children as responsible human beings. That is so outside the

---

sentencing did not conclude until 3:50 pm. N.T., 8/21/15, at 1, 284. In that time, the trial court heard from seven witnesses, and the parties entered 15 documents into evidence, including four letters submitted in support of Appellant.

realm of normal, appropriate parental behavior that that need not be commented upon further. It's vile in the extreme.

And as [the Commonwealth's Attorney] points out, I think quite correct, these events - - these offenses were committed over a seven-year period of time.

Mr. Stern, you did deprive your son of his childhood. And I think without question that's going to carry long-term consequences for him, but we hope and pray that he will find the strength to move on and make a life for himself that's constructive, that he can somehow put this in his past, but that's going to be very difficult, problematical. If he succeeds, wonderful.

But despite that, we have to take into account the seven years of horror that he experienced at your hands. He was truly a victim in the sense that he had nowhere to turn. The person who owed him everything basically deprived him of everything as a child. So that has to be taken into account.

Now, in imposing a sentence, the Court doesn't act out of vengeance, no, but the Court certainly has to take into account the nature of the offense. And we talk in terms of the goals of the sentencing. Certainly, we take into account the rehabilitative needs of the Defendant, but that's a factor that's considered. It's not - - it's not an exclusively considered factor.

In addition to that, we consider the need to send the right message to the larger society. Every sentencing in every case in these Courts is, we hope, a lesson for the larger community as to what conduct will and will not be tolerated.

So while we don't sentence out of vengeance, our sentence has to essentially channel society's outrage at the behavior. That's what this is about.

So we talk in terms of individual deterrence, incapacitation, if you please. You've got to be taken out of society for the period of time that we think is appropriate so that others cannot be victimized.

But beyond the need for individual deterrence, a sentence also has to serve the goal of general deterrence. That's the lesson to the larger community. This conduct simply cannot be tolerated in civilized society. So the sentence has to reflect that.

Now, I do take into account that you did plead guilty. That certainly did spare [the victim] the necessity of offering his testimony in court, but that's basically a consideration that doesn't persuade the Court to impose a sentence any less than the one that I'm about to impose. I think any sentence other than the one I'm about to impose would depreciate the seriousness of this offense.

I take into account your age. And I understand that this is going to be a sentence that deprives you of a good portion of the rest of your life, but it's a sentence that must be imposed, I think, for the reasons I've indicated.

And I come back to the point that you made. This was not a single, isolated act for which these guidelines are essentially designed. The guidelines in this case - - and I certainly take into account the sentencing guidelines - - but these sentences will be outside the guidelines as they must be because the guidelines don't take into account the fact that these offenses were repeated over and over and over again literally hundreds of times when this youngster was victimized.

And, again, the fact that the victim was your own child is a betrayal of trust and an utter betrayal of the proper parental role. And I believe what you say is that you now realize that, and you are remorseful. I don't doubt that.

But the point that I come back to is that these crimes deserve punishment. They deserve severe punishment. Liberty is precious. We don't take it away lightly, but in this case, I think you must be deprived of your liberty for a substantial period of time, Mr. Stern.

So if you'll stand, please.

The following sentence is imposed.

N.T., 8/21/15, at 273-78.

Based on all of the foregoing, we conclude that the trial court did not abuse its discretion in imposing a sentence in excess of the aggravated range of the sentencing guidelines. Although the sentences imposed on

each count significantly exceeded the sentencing guidelines, the aggregate sentence was not unreasonable.[3]   Moreover, the trial court, having considered all of the pertinent aggravating and mitigating information, did not abuse its discretion in sentencing Appellant to the statutory maximum. *See Commonwealth v. Rossetti*, 863 A.2d 1185, 1194-95 (Pa. Super. 2004) (affirming a statutory maximum sentence imposed after the trial court considered and balanced all of the relevant mitigating and aggravating facts).  Thus, Appellant's argument to the contrary lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/5/2016

---

[3] We note that, had the trial court sentenced Appellant to the top of the standard range and run all six sentences consecutive to one another, Appellant would have received an identical 25 to 50 year sentence.

- 14 -

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | NO. CP-46-CR-0001919-2014 |
| | : | |
| vs. | : | |
| | : | SUPERIOR COURT DOCKET |
| WILLIAM STERN | : | NO. 3308 EDA 2015 |

## OPINION

NICHOLAS, S.J.                                      **January 12, 2016**

The defendant, William Stern has appealed to the Superior Court of Pennsylvania from the judgment of sentence, 25 to 50 years imprisonment, imposed on August 21, 2015.

## PROCEDURAL HISTORY

On February 27, 2015 the defendant, represented by able, privately retained counsel entered an open plea of guilty before the undersigned to two (2) counts of rape[1]; two (2) counts of involuntary deviate sexual intercourse[2]; corruption of minor[3]; and incest[4]. Sentence was deferred and the court ordered a presentence investigation, a psychosexual evaluation, and a Sexually Violent Predator Assessment. The defendant remained on bail pending sentencing.

On August 21, 2015, upon praecipe filed by the attorney for the Commonwealth, all evaluations having been completed, a sexually violent predator and sentencing hearing was convened. Both sides presented expert testimony and argument. At the conclusion of the sexually violent predator phase of the hearing, the court determined to accept the testimony of the Commonwealth's expert over

---

[1] Count 1, rape by forcible compulsion, 18 Pa .C.S.A. §3121(a)(i) (victim under 16 years of age requiring a mandatory 10-year term of imprisonment), 42 Pa. C.S.A. §9718(a)(i); Count 5, rape by forcible compulsion, (victim over 16 years of age), 18 Pa. C.S.A.§3121(a)(i);

[2] Count 18, involuntary deviate sexual intercourse by forcible compulsion, 18 Pa. C.S.A. §3123(a)(i).(victim under16 years of age, requiring 10-year mandatory term of imprisonment), 42 Pa .C.S.A. §9718 (a)(i); Count 23, involuntary deviate sexual intercourse by forcible compulsion (victim over 16 years of age), 18 Pa. C.S.A. §3123(a)(i);

[3] Count 197, corruption of minor (felony of the 3rd degree), 18 Pa. C.S.A. §6301(a)(i)(ii);

[4] Count 209, incest (felony of the 2nd degree, victim under 13 years of age), 18 Pa. C.S.A. §4302(b)(i).

1

that of the defense expert (N.T., 8/21/15, at 215-216). For all the reasons stated on the record, the court concluded that the Commonwealth had proven by clear and convincing evidence that William Stern is a sexually violent predator (N.T., 8/21/15, at 219).

The court then proceeded to the sentencing phase of the hearing (N.T., 8/21/15, at 219-284). After hearing the testimony of the witnesses, the arguments of the counsel and the defendant's statement in the exercise in his right of allocution (N.T., 8/21/15, at 271-273), the court imposed the following sentences:

On Count 1, rape – 10 to 20 years imprisonment; on Count 5, rape, 10 to 20 years imprisonment to run concurrently with Count 1; on Count 18, involuntary deviate sexual intercourse, 10 to 20 years imprisonment to run consecutively to Count 5; on Count 23, involuntary deviate sexual intercourse, 10 to 20 years imprisonment to run concurrently with the sentence imposed on Count 18; on Count 209, incest, 5 to 10 years imprisonment to run consecutively with the sentence imposed on Count 23; and on Count 197, corruption of a minor, a concurrent sentence of 3 ½ to 7 years imprisonment run concurrently with the sentence imposed at Count 209. The aggregated sentence was thus not less than 25 years nor more than 50 years imprisonment, dating from August 21, 2015, with one day of credit for time served.

On August 31, 2015, the defendant, by his counsel, filed a post-sentence motion raising two issues:

i.      The court erred in finding that the defendant met the DSM-5 definition of pedophilic disorder and that he met the statutory criteria to be classified as a sexually violent predator;

ii.     The court imposed a sentence that was manifestly unfair and unreasonable and a less severe sentence would accomplish the purposes of (i) appropriately punishing the defendant, (ii) protecting society, and (iii) deterring others from committing similar offenses.

2

As directed by the court, the Commonwealth filed a response in opposition to the defendant's post-sentence motion.

By Order dated October 20, 2015, this court concluded: (i) that we correctly found that the Commonwealth met its burden to prove by clear and convincing evidence that the defendant was a sexually violent predator; and (ii) that the sentence imposed was fair, just and appropriate under all the circumstances and for all the reasons explained by this court in imposing sentence. Accordingly, the defendant's post-sentence motion was denied.

On November 20, 2015, the appellant's counsel filed a timely concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b) raising the following issues:

(1). Did the Honorable Trial Court err in finding that the appellant (i) has a mental abnormality or disorder making him likely to engage in predatory sexually violent offenses and (ii) meets the statutory criteria to be considered a sexually violent predator;

(2). Did the Honorable Trial Court abuse its discretion in imposing a sentence that was manifestly unreasonable and, essentially, a life sentence given the appellant's age.

For the reasons that follow, we respectfully believe these contentions are without merit and that the judgment of sentence and our finding that appellant is a sexually violent predator should be affirmed.

## FACTS

The victim in this case is the defendant's biological son. On January 30, 2014, a friend of the victim, a fellow student at Norristown Area High School, informed a police officer that his friend, the victim, had disclosed to him that his father had been sexually assaulting him for many years.

3

On February 11, 2014, when the victim was 18 years old, he reported to the police that his biological father had sexually assaulted him since he was 11 years old. The first sexual assault was in September, 2007 (the month in which the victim turned 12). The defendant told him that he "wanted to see how he was developing sexually." He showed the victim a pornographic video on his laptop. The defendant then manually masturbated the victim. The defendant asked the victim about his sexual preference and "kept telling" him that it was "ok, and that there was nothing wrong." The victim reported that the sexual assaults continued "bi-weekly from that time until the present." The assaults progressed over time into mutual oral sex and mutual anal intercourse. The victim stated that oral sex occurred "probably close to 100 times, if not more." The victim reported that he never ejaculated, but that the defendant ejaculated "every time," into the victim's mouth. Intercourse occurred more than seven times. The victim reported that he grew up thinking, when he was younger, that it was "between every father and son." The victim was advised by the police to leave the home and seek a Protection From Abuse Order. The last sexual assault occurred on February 3, 2014. The victim stated, "I thought it was my fault that it was happening." He reported that his father was "everything I had" and that he had "no other way to live." "The way I saw it, I was stuck. I didn't have a choice."

In an intercepted telephone conversation between the victim and his father, the defendant admitted the sexual assaults but stated that the victim "never said no." He told the victim, "All I ever did was ask. And, and, and you said, okay." The defendant told the victim in that telephone conversation that "there would be no more sex," if the victim returned home.

The defendant gave a statement to the police after he was arrested on February 19, 2014. He admitted that he had engaged in sexual activity with his son, including manual masturbation, oral sex, and anal intercourse. He admitted showing the victim adult pornography, including homosexual pornography. He admitted that he knew the sexual encounters were wrong, illegal and no part of the

4

normal father-son relationship. When asked if he had anything to add to his statement, the defendant stated that the victim "never said anything that would indicate any problems or issues or that he was being forced. Therefore, it is my belief that it was voluntary."

The victim began living with the defendant in March of 2004 when the victim would have been eight years old. The defendant had little contact with the victim prior to 2004. He obtained custody of the victim after the victim's mother was arrested in New Mexico for multiple felonies. The victim lived with the defendant until these crimes came to light.

## DISCUSSION

### (1)

### SEXUALLY VIOLENT PREDATOR DETERMINATION

Dr. Jennifer R. Hahn, a member of the Sexual Offenders Assessment Board, conducted the evaluation of the defendant for the Board, authored a report (Exhibit C-2) and testified at the hearing on August 21, 2015. (N.T., at 6-77). Having reviewed all available records, all the factors specified in the Act, and having considered current and credible sex offender research, it was Dr. Hahn's opinion that the defendant meets the criteria for classification as a Sexually Violent Predator under the Act. Dr. Hahn concluded that the defendant, having entered a guilty plea to sexually violent offenses, is an individual with a mental abnormality or personality disorder that makes him likely to engage in predatory sexually violent offenses.

In her report, and in her testimony, Dr. Hahn considered the 15 statutory factors in coming to her conclusion that the defendant is a sexually violent predator; 42 Pa. C. S. A. § 9799.24(b)(1)(2)(3) and (4):

5

- *Whether the offense involved multiple victims.* There was one victim in the current offense but the repeated victimization over a seven year period involved a pattern of behavior with a male victim which is associated with an increased likelihood of sexual re-offending.

- *Whether the defendant exceeded the means necessary to achieve the offense.* There is no indication that the defendant exceeded the means necessary to achieve the offenses.

- *The nature of the sexual contact with the victim.* The defendant, over a seven year period, sexually assaulted the victim. Sexual assaults became increasingly intrusive over time.

- *The relationship of the defendant to the victim.* The victim is the defendant's biological son. The victim was totally dependent upon the defendant for his sustenance, giving the defendant complete access and total dominance over the victim.

- *Age of the victim.* The age of the victim when the sexual offending began is consistent with pedophilic sexual interest defined as sexual interest in a pre-pubescent child (generally 13 years or younger). Deviant sexual interest (such as arousal to children) is the strongest predictor of sexual recidivism.

- *Whether the offense included a display of unusual cruelty by the defendant during the commission of the crime.* There is no indication that the defendant displayed unusual cruelty.

- *The mental capacity of the victim.* The victim's mental capacity was limited by his chronological age.

- *The defendant's prior criminal record (sexual and non-sexual).* The defendant has no known prior criminal history.

- *Whether the defendant completed any prior sentences.* While the defendant had no history of prior sentences, he failed to comply with bail conditions and the PFA order by contacting the victim. This is associated with an increased likelihood of re-offending.

- *Whether the defendant participated in available programs for sexual offenders.* While the defendant sought and obtained treatment from Sexual Addiction Treatment Services, LLC for a year from the time of his arrest until just prior to his sentencing, Dr. Hahn opined that "there is no reason to believe that he has learned the skills necessary to manage his sexual offending." It

6

is also noteworthy that the report of Sexual Addiction Treatment Services, LLC authored by Dr. Jennifer Weeks, the defense expert (D-2), reflected that early in his treatment, the defendant was evasive and vague about his sexual contact with his son, displaying a great deal of distorted thinking and denial about the abuse.

- *Age of the defendant.* The defendant was born in 1963. Over the period of the offenses from 2007 to 2014, the defendant would have been 44 years old to 51 years old. This is consistent with a sexual deviant pathway (N.T., 8/21/15 at 30).

- *Uses of illegal drugs by the defendant.* There is no history of substance abuse.

- *Any mental illness, mental disability, or mental abnormality.* Dr. Hahn opined that the defendant meets the DSM-V diagnostic criterial for **Pedophilic Disorder**. He repeatedly engaged in sexual activity with a pre-pubescent child for at least one year. He is at least 16 years old and at least five years older than the victim.

- *Behavioral characteristics that contribute to the defendant's conduct.* The defendant displayed "grooming" behavior by showing the victim pornography, normalizing the behavior and by engaging in increasingly intrusive sexual behaviors over time. (N.T., 8/21/15 at 42-46)

- *The defendant has a congenital or acquired "condition" which is the impetus to the sexual offending.* Dr. Hahn opined that sexually deviant interests are congenital or acquired.

- *The defendant suffers from a lifetime "condition".* Deviant sexual interests are stable and lifelong. (N.T. at 44)

- *The "condition" over-rode the defendant's emotional/volitional control.* Despite knowing that it was wrong, the defendant repeatedly sexually assaulted his son. (N.T. at 44)

- *Likelihood of re-offending.* The defendant demonstrated a sexually deviant pathway to offending.

The defendant presented Dr. Jennifer Weeks as an expert. Dr. Weeks authored a report dated August 5, 2015 (D-3) and testified (N.T., 8/21/15, at 77-151) that in her opinion the defendant does not meet the criteria for classification as a

7

a sexually violent predator. The main difference of opinion between Dr. Hahn and Dr. Weeks is whether the defendant suffers from pedophilic disorder (N.T., at 187-188).

Dr. Weeks' opinion rested upon two considerations: "The *possibility* that Mr. Stern's son was not pre-pubescent but was starting the - - starting the process of puberty at the time of 11, nearly 12, combined with his ABEL Screen results, which show that he does not have any object - - from this objective testing, he does not have any arousal - - sexual arousal to males of any ages nor any pre-pubescent, either males or females.

"So that's - - my opinion. It's based partially on the *possibility* that Mr. Stern's son could have been in the puberty process as well as the subjective testing measure." (N.T., at 114, and 128).

In rebuttal, Dr. Hahn addressed the main difference between her opinion and Dr. Weeks' opinion – the pedophilic disorder.

Specifically, Dr. Hahn accepted the DSM-5 construct of pre-pubescent as generally a child under 13 years of age. In contrast, Dr. Weeks merely offered the *"possibility"* that the victim was not pre-pubescent when the abuse began. Dr. Hahn further testified in rebuttal that the ABEL Screen is not heavily relied upon by psychologists who diagnose an individual with a paraphilia such as pedophilia (N.T., at 188). Dr. Hahn explained that there have been a number of studies that have shown that it is not a reliable diagnostic tool. In this respect, Dr. Weeks' conclusions were based on the defendant's visual reaction time when viewing images of different individuals. It is presumed that the longer the person looks at an image, children for example, that indicates an interest in children. Dr. Hahn pointed out that a number of studies have shown that a subject can fake a result by simply looking away every time a child comes on the screen. Given the defendant's minimizing and denying various behaviors, Dr. Hahn concluded the test is in no way valid for him.

8

The court concurred with Dr. Hahn's opinion and rejected Dr. Weeks' opinion and explained our conclusion as follows:

"The court has been through hearings of this sort before. And I think I'm familiar with the case law and the statutory law.

As I said earlier, this determination essentially centers on the court's determination of the various opinions that were expressed here today - - all of the evidence, obviously in light of the factors set forth in the statute.

So, basically, I have to weigh one opinion against the other.

I'm frank to say that I accept Dr. Hahn's testimony over that of the testimony of Dr. Weeks in terms of her experience, her credentials, and all of the reasons that she stated in her testimony.

She identified all of the factors appropriately that are set forth in the statute.

And I must say I have heard other experts opine on this in this area. And Dr. Hahn's testimony, I think, was among the best testimony I've heard in this area. So I commend her for her testimony and her evaluation.

The testimony on the other side offered by Dr. Weeks basically centered on the two things as we've discussed: That there really is no evidence that the child was prepubescent, and - - and in that regard, I think, as Mrs. Feden [assistant district attorney] has pointed out, the Commonwealth's burden is to prove that the Defendant suffered from a mental disorder or a personality disorder - - a mental disability as defined in the DSM-V. He suffers from pedophilic disorder in the testimony and in the opinion of Dr. Hahn, which I credit.

So I find by clear and convincing evidence, accepting her testimony, that the Defendant does suffer from pedophilic disorder.

He repeatedly engaged in sexual activity with a prepubescent child for at least one year. Prepubescence is defined as a youngster under 13. Clearly, these offenses occurred when the youngster was under 13 years of age. And I don't think it's incumbent upon the Commonwealth to prove beyond a reasonable doubt that the victim was somehow prepubescent. I think they can rely upon the definition, which I accept as well. I accept the testimony of Dr. Hahn in that regard.

And with respect to the other reason that Dr. Weeks offered, she relied on this ABEL Screen, which is self-reporting, this component of it. And I

9

think, again, Dr. Hahn's testimony pointed out the weakness and utility of that particular tool in coming to a conclusion.

Clearly, the Defendant was convicted by his guilty plea of a sexually violent offense.

I stated my opinion based on the testimony, which I accept the opinions of Dr. Hahn that he suffers from a pedophilic disorder.

His behaviors were certainly - - they covered a period of time.

It involved grooming behavior.

I'm satisfied that the Defendant's conduct was clearly predatory. (C.P.) came to him when he was eight years of age. He was the parent. He was the sole support. And as Dr. Hahn observed, he said he felt trapped. And this conduct was clearly predatory in the sense that it involved leading this youngster down a path of first manual stimulation, and then oral sex, anal sex, and all the rest of it.

Now, there's been opinion expressed that the risk of re-offending is low. That's one aspect of it. It's not an independent factor that the Commonwealth must prove by clear and convincing evidence. These - - these factors are all to be considered, but no one factor is dispositive. The presence or absence of any factor - - any particular factor is not dispositive. It's a combination of factors which allows the Court to conclude, as I do, that the Defendant suffers from a mental abnormality or personality disorder that makes him likely to engage in predatory sexual offenses.

As Dr. Hahn said and I agree, the past is prologue.

So I conclude that that element has been met as well.

I find by clear and convincing evidence that William Stern is a sexually violent predator."

(N.T., 8/21/15, at 215-219).

As with any sufficiency of the evidence claim, the evidence and reasonable inferences therefrom must be viewed in the light most favorable to the Commonwealth. The trial court's determination of SVP status will be reversed only if the Commonwealth has not presented clear and convincing evidence that each

10

element of the statute has been satisfied. *Commonwealth v. Meals*, 590 Pa. 110, 912 A.2d 213, 218 (2006).

In *Commonwealth v. Hollingshead*, 111 A.3rd 186 at 189 (Pa. Super. 2015), the Superior Court panel explained:

> "Appellant challenges the sufficiency of the evidence relating to the trial court's SVP designation. Our standard and scope of review is well-settled:
>
>> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a[n SVP]. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.
>
> *Commonwealth v. Baker*, 24 A.3d 1006, 1033 (Pa. Super. 2011), *aff'd*, 621 Pa. 401, 78 A3d 1044 (2013)."

In short, we believe the manifest legislative purpose, to protect the public, is met by subjecting individuals like the appellant to the most stringent registration and notification requirements of the Act as a Sexually Violent Predator. One may well ask, if William Stern is not a Sexually Violent Predator, who is?

We believe the record fully supports our determination that the appellant meets the statutory definition of a sexually violent predator. Given the scope of appellate review of this determination, such finding should be affirmed.

## THE SENTENCE

The appellant's challenge to the discretionary aspects of the sentence entitles him to no appellate relief.

11

At the conclusion of the full day SVP/sentencing hearing, and after careful consideration of the reports, evaluations, testimony and arguments of counsel, the undersigned fashioned the sentence that we believe was fair, just and appropriate under all the circumstances and for all the reasons explained by this court on the record as follows:

"All right. The Court has the responsibility of fashioning a sentence and explaining the reasons for that sentence. And as judges, we have no greater responsibility than considering a sentence where the person to be sentenced presents with no prior criminal history but the offenses committed are serious, not to say horrendous and vile in the extreme. Mr. Stern has acknowledged that much.

The Sentencing Code directs the Court to consider a sentence where a sentence of confinement is consistent with the need to protect the public, consistent with the gravity of the - - of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the Defendant.

We have presentence investigations done. And we have sentencing hearings. And we've been at this for the better part of the entire day to consider the facts of this case and to consider Mr. Stern's involvement and his personal situation. We sentence an individual. We sentence the crimes, but we sentence the individual as well.

So we take everything into account, everything that is reflected in the reports. And, certainly, I take into account the statements that Mr. Hilles provided with respect to the family and friends that are here in support of Mr. Stern.

The Court first must consider the seriousness of the offense. And no one who has been in this courtroom could fail to come to the conclusion that these offenses were vile and horrendous in the extreme.

Mrs. Feden [ADA], I think, correctly points out we owe our children love and nurture. We don't victimize our children as responsible human beings. That is so outside the realm of normal, appropriate parental behavior that that need not be commented upon further. It's vile in the extreme.

And as Mrs. Feden points out, I think quite correct, these events - - these offenses were committed over a seven-year period of time.

12

Mr. Stern, you did deprive your son of his childhood. And I think without question that's going to carry long-term consequences for him, but we hope and pray that he will find the strength to move on and make a life for himself that's constructive, that he can somehow put this in his past, but that's going to be very difficult, problematical. If he succeeds, wonderful.

But despite that, we have to take into account the seven years of horror that he experienced at your hands. He was truly a victim in the sense that he had nowhere to turn. The person who owed him everything basically deprived him of everything as a child. So that has to be taken into account.

Now, in imposing a sentence, the Court doesn't act out of vengeance, no, but the Court certainly has to take into account the nature of the offense. And we talk in terms of the goals of the sentencing. Certainly, we take into account the rehabilitative needs of the Defendant, but that's a factor that's considered. It's not - - it's not an exclusively considered factor.

In addition to that, we consider the need to send the right message to the larger society. Every sentencing in every case in these Courts is, we hope, a lesson for the larger community as to what conduct will and will not be tolerated.

So while we don't sentence out of vengeance, our sentence has to essentially channel society's outrage at the behavior. That's what this is about.

So we talk in terms of individual deterrence, incapacitation, if you please. You've got to be taken out of society for the period of time that we think is appropriate so that others cannot be victimized.

But beyond the need for individual deterrence, a sentence also has to serve the goal of general deterrence. That's the lesson to the larger community. This conduct simply cannot be tolerated in civilized society. So the sentence has to reflect that.

Now, I do take into account that you did plead guilty. That certainly did spare (C.P.) the necessity of offering his testimony in court, but that's basically a consideration that doesn't persuade the Court to impose a sentence any less than the one that I'm about to impose. I think any sentence other than the one I'm about to impose would depreciate the seriousness of this offense.

I take into account your age. And I understand that this is going to be a sentence that deprives you of a good portion of the rest of your life, but it's a sentence that must be imposed, I think, for the reasons I've indicated.

13

And I come back to the point that you made. This was not a single, isolated act for which these guidelines are essentially designed. The guidelines in this case - - and I certainly take into account the sentencing guidelines - - but these sentences will be outside the guidelines as they must be because the guidelines don't take into account the fact that these offenses were repeated over and over and over again literally hundreds of times when this youngster was victimized.

And, again, the fact that the victim was your own child is a betrayal of trust and an utter betrayal of the proper parental role. And I believe what you say is that you now realize that, and you are remorseful. I don't doubt that.

But the point that I come back to is that these crimes deserve punishment. They deserve severe punishment. Liberty is precious. We don't take it away lightly, but in this case, I think you must be deprived of your liberty for a substantial period of time, Mr. Stern.

So if you'll stand, please.

The following sentence is imposed."

N.T., 8/21/15 at 273-278.

The appellant filed a timely Notice of Appeal and preserved his issues in a post-sentence motion. We believe, however, that the record does not present a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. In *Commonwealth v. Swope*, 123 A.3d 333 at 338 (Pa. Super 2015), the Superior Court panel noted:

> "'The determination of what constitutes a substantial question must be evaluated on a case-by-case basis.'" *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011). Further:

> "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."

As the record reflects, this court carefully considered the factors set out in 42 Pa. C.S.A. § 9721(b) in fashioning the sentence.

The court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. Rather, the imposition of consecutive rather than concurrent sentences will present a substantial question in only "the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Swope*, 123 A.3d 333 at 338.

We believe this court acted well within its discretion in imposing consecutive sentences on three of the six Bills of Information being sentenced. If all six Bills had been sentenced consecutively, the aggregated sentence would have been 48-1/2 to 97 years. Contrary to the appellant's contention, we did not impose a "life sentence". The appellant is now 52 years of age and under the sentence imposed, could be released in his lifetime. While the sentence was long, it was not disproportionate to the horrendous nature of the appellant's crimes and was not unduly harsh or excessive.

*Commonwealth v. Prisk*, 13 A.3d 526 (Pa. Super. 2011) presented facts remarkably similar to the instant case. Prisk was convicted of multiple counts of rape, IDSI and indecent assault. He systematically sexually abused his step-daughter over a period of six years, from the time the victim was ten years old. As the victim grew older, the abuse escalated, including mutual masturbation, oral sex and rape, almost on a daily basis. The aggregated sentence of 633 years to 1500 years' imprisonment was affirmed by the Superior Court. As here, the defendant argued that the sentence was essentially a life sentence and was manifestly excessive. The Superior Court disagreed, noting that consecutive sentences were not imposed on every count and given the violent, repeated nature of the defendant's crimes, the aggregated consecutive sentence was not excessive. See, too, *Commonwealth v. Austin*, 66 A.3d 798 (Pa. Super. 2013). (aggregated sentence of 35 to 70 years imposed on 47 of 96 counts of possession of child pornography was not an abuse of discretion); *Commonwealth v. Diaz*, 867 A.2d 1285 (Pa. Super. 2005), (aggregated sentence of 12 to 24 years on less than all 42 counts being

15

sentenced on a 74 year old defendant, essentially amounting to a life sentence, was not manifestly excessive); *Commonwealth v. Caldwell*, 117 A.3d 763 (*en banc,* Pa. Super, 2015), (aggregate sentence of 31 to 62 years was not excessive).

The standard of review of the sentencing court's imposition of a sentence was outlined clearly by our Supreme Court in *Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957 (2007). Appellate review of the discretionary aspects of the sentence is confined by the statutory mandates of 42 Pa. C.S.A. § 9781(c) and (d). As *Walls* makes clear, sentencing is a matter vested in the sound discretion of the sentencing judge, and the sentence will not be disturbed on appeal absent a manifest abuse of discretion. Where, as here, the sentencing court detailed the reasons for the sentence in satisfaction of 42 Pa. C.S.A. 9721(b), as directed by the Supreme Court in *Walls*, the appellate court will not reweigh the sentencing factors and impose its judgment in place of the sentencing court.

## CONCLUSION

For the above reasons, we believe the judgment of sentence should be affirmed.

BY THE COURT:

WILLIAM T. NICHOLAS, S.J.

Copy of the above opinion to the following on
January 1 2, 2016:

Robert Martin Fallen, Esquire, Deputy District Attorney, Chief of Appeals, District Attorney's Office
Kristen M. Feden, Esquire, Assistant District Attorney
Henry S. Hilles, III, Esquire, Defense Counsel
Christine Sanchez, Deputy Court Administrator, Criminal Division

By: _____
Margaret A. Carter, Judicial Assistant

16